**Z.K. MARINE, INC. and Southern Offshore Yachts, Inc.,**
**Plaintiffs,**

**v.**

**M/V ARCHIGETIS, her engines, tackle, furnishings, etc. in rem, Malvern Maritime, Inc., her owner, operator, etc., Federal Pacific (Liberia), LTD., a division of Fednav Limited d/b/a Fedpac Lines; Continental Stevedoring Terminals, Inc., and Off Shore Marine, Inc., Defendants.**

**JAY BETTIS AND CO. OF FLORIDA, and Miller Yacht Sales, Inc.,**
**Plaintiffs,**

**v.**

**FEDERAL PACIFIC (LIBERIA), LTD., and Fednav Limited, d/b/a Fedpac Lines, Malvern Maritime, Inc., and the M/V ARCHIGETIS, in rem, its engines, furniture, tackle, apparel, etc., Defendants.**

**Nos. 88–1715–Civ., 88–1838–Civ.**

United States District Court,
S.D. Florida.

Dec. 3, 1992.

---

Robert Lamar Bell, Miami, FL, Lawrence B. Brennan, Bigham, Englar, Jones & Houston, New York City, for plaintiffs Bettis/Miller Yacht.

Robert A. Craven, McIntosh & Craven, Fort Lauderdale, FL, for plaintiff Z.K. Marine.

Fernando S. Aran, Coral Gables, FL, for defendants Fedpac/Fednav.

Allan Kelley, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, FL, for defendant Malvern Maritime.

## ORDER

HOEVELER, District Judge.

THIS CAUSE comes before the Court upon Z.K. Marine's[1] and Jay Bettis and Miller Yacht Sales' Motions to Alter, Amend or Correct Judgment or Order Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. Plaintiffs have moved the Court to reconsider its January 8, 1991 Omnibus Order[2] granting partial summary judgment to Defendants, thereby limiting their liability to $500 per lost or damaged yacht.

The Court heard argument on Plaintiffs' Motions in August of 1991. It then requested supplemental memoranda and further oral argument limited to the question of what law applies to the instant situation—the Carriage of Goods by Sea Act ("COGSA"), the Hague Rules, the Hague Visby Rules, or the Harter Act. Having duly considered the supplemental memoranda and argument of counsel, the Court is now prepared to rule on this issue.

---

**1.** Southern Offshore Yachts, Inc. has settled its claim with Defendants, and is no longer a party to this action.

**2.** *Z.K. Marine, Inc. v. M/V Archigetis,* 776 F.Supp. 1549 (S.D.Fla.1991).

## STANDARD OF REVIEW

■ "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made:

> [It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court ... already thought through—rightly or wrongly.... The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside. the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va. 1983); *Moog, Inc. v. United States,* No. 90–215E, 1991 WL 255371, at *1, 1991 U.S. Dist. LEXIS 17348, at *2 (W.D.N.Y. Nov. 21, 1991).

While the Court ultimately agrees with Defendants' assertion that Plaintiffs' motions are both procedurally flawed and substantively unpersuasive, in reviewing its January 8, 1991 Omnibus Order the Court found some of its language to be unclear and potentially misleading. Thus, the Court writes here to clarify the reasoning supporting its earlier conclusions.

## DISCUSSION

Plaintiffs assert that the Court erred in its original determination of the facts and law of this case. The Court has thoroughly examined Plaintiffs' various arguments and finds that none are meritorious.

■ In the January 8, 1991 Order this Court held that COGSA, with its $500 per package limitation on carrier liability, does not apply of its own force to the instant contract because COGSA does not automatically extend to goods carried "on-deck"; however, it went on to hold, based on the language of the bills of lading, that the parties had contractually extended COGSA's provisions to this shipment. *Z.K. Marine,* 776 F.Supp. at 1553. While the Court remains confident that this conclusion was correct, it recognizes that some of the language of its January 8, 1991 opinion was confusing and may have caused Plaintiffs to believe the Court had misapprehended the law or the parties' arguments. The Order stated:

> The language of the paramount clause in the bills of lading does not directly refer ·to COGSA. Rather, it appears to require that the Hague or Hague/Visby Rules be applied. The Hague Rules were, however, codified in COGSA. Thus the parties appear to have stipulated by contract that COGSA would apply to these bills of lading. Accordingly, this Court finds that COGSA applies to this situation.

*Id.* (citations and footnotes omitted). While the result that COGSA applies is correct, COGSA is not identical to either the Hague or the Hague Visby Rules, and the Court did not mean to imply that COGSA applies for that reason. Rather, COGSA controls because the paramount clause—read in conjunction with clauses nine and eighteen—evidences the parties' intent to extend COGSA to this contract for the on-deck carriage of five yachts.

■ COGSA is the U.S. codification of the original Hague Rules and is generally applicable to goods shipped from foreign ports to ports in the United States. 46 U.S.C.App. §§ 1300–1315; *Sunkist Growers, Inc. v. Adelaide Shipping Lines, Ltd.,* 603 F.2d 1327 (9th Cir.1979) *cert. denied,* 444 U.S. 1012, 100 S.Ct. 659, 62 L.Ed.2d 640 (1980). It is undisputed that COGSA does not apply *ex proprio vigore* to this contract because the definition of "goods" provided in 46 U.S.C.App. § 1301(c) does not include

carriage of "on-deck" cargo.[3] Nonetheless, it is well established that COGSA can be extended to contracts to which it does not apply of its own force if the parties so agree. *Colgate Palmolive Co. v. S/S Dart Canada,* 724 F.2d 313 (2nd Cir.1983), *cert. denied,* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *Pannell v. The American Flyer,* 157 F.Supp. 422 (S.D.N.Y.1957), *mod.,* 263 F.2d 497 (2nd Cir.1959), *cert. denied,* 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959). Defendants contend that although COGSA does not apply *ex proprio vigore,* the bills of lading evidence the parties' agreement to extend COGSA to this contract. Plaintiffs counter that the Harter Act[4] applies, or in the alternative, that the Hague or Hague Visby Rules control.[5]

Plaintiffs contend that even if the Court was not mistaken about the applicable law or facts, reconsideration is appropriate because the Court's Order is inconsistent with the Eleventh Circuit precedent established by the *Ocean Lynx* decision. *Insurance Co. of North America v. M/V Ocean Lynx,* 901 F.2d 934 (11th Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991). That case directly addressed the issue of extending COGSA to acts and circumstances not mandated by its language. At oral argument Plaintiffs asserted that this Court did not follow the test established in *Ocean Lynx.*

■ Plaintiffs' reliance on *Ocean Lynx* is misplaced for two reasons: first, *Ocean Lynx* was decided prior to this Court's Omnibus Order, and thus is not "new law" upon which a motion for reconsideration is properly based; second, even if *Ocean Lynx* did provide a new legal theory for Plaintiffs, it is not in any way inconsistent with this Court's earlier decision. In a convenient and well-ordered fashion the

*Ocean Lynx* opinion sets out the "notice and opportunity" test that courts—including this Court—have been using for some time. The test simply identifies and discusses the various concerns this Court already considered when it determined that COGSA was extended to the contract at issue. The *Ocean Lynx* Court held that to contractually extend COGSA's liability limitation the carrier must:

1) give the shipper adequate *notice* of the $500 liability limitation by including a paramount clause in the bill of lading expressly adopting the provisions of COGSA, and

2) give the shipper a *fair opportunity* to avoid COGSA's liability limitation by declaring excess value.

*Ocean Lynx,* 901 F.2d at 939. Both prongs of this two-part test were met by the carrier in the instant case.

### I. Clause Three: The Paramount Clause

■ The purpose of a paramount clause is to establish what law will apply to the entire contract. It is not designed to detail the specific provisions of the governing law; it simply functions to identify the legal framework within which the remaining provisions of the contract will be construed. While the language of the paramount clause in this case does not list COGSA by name, a careful reading of its four-step hierarchy of applicable law leads to the inevitable conclusion that COGSA governs this contract. In the interests of clarity, the Court will parse the paramount clause to demonstrate why subclause three controls, dictating application of COGSA. The paramount clause reads as follows:

This Bill of Lading shall have effect subject to the provisions of any legislation

---

3. The yachts were shipped pursuant to bills of lading expressly specifying on-deck carriage in cradles; the contract at issue therefore clearly falls outside the normal purview of COGSA.

4. 46 U.S.C.App. §§ 190–95 (1982 & Supp. IV 1986). The Harter Act applies to all voyages to which COGSA does not apply, including those between American and foreign ports, and allocates the risks of the voyage from delivery to the carrier until redelivery to the consignee at a fit and customary wharf. Because the Court

finds this contract is subject to COGSA, the Harter Act is clearly inapplicable.

5. Both the Hague and the Hague Visby Rules have been amended and no longer include the $500 limitation on carrier liability originally contained in the Hague Rules and enacted in U.S. COGSA. Either would thus allow a much higher recovery for Plaintiffs in this case than does COGSA.

incorporating the Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading dated Brussels, August 25th 1924 (the Hague Rules) or those Rules as amended by the Protocol signed at Brussels February 23rd 1968 (the Hague Visby Rules) and which is compulsorily applicable to the contract of carriage contained herein.[6] If no such legislation is compulsorily applicable, the Hague Rules or, if applicable, the Hague Visby Rules as enacted in the country of the port of loading shall apply.[7] When no such enactment is in force in the country of the port of loading, the corresponding legislation of the country of the port of discharge shall apply[8] and in the absence of any such legislation, the terms of the 1924 Convention as amended by the 1968 Protocol shall apply.[9]

The parties agree that subclause one does not control because no legislation is compulsorily applicable to this contract. Subclause two then dictates that the Hague or Hague Visby Rules as enacted in the country of the port of loading be applied. Taiwan (the country of the port of loading) has not enacted legislation corresponding to either the Hague or the Hague Visby Rules, so subclause two is inapplicable as well. Thus, subclause three—which requires resort to the corresponding legislation of the country of the port of discharge—will control.[10] Plaintiffs do not dispute that the country of the port of discharge is the United States or that COGSA is the "corresponding legislation" enacted in the U.S. to codify the original Hague Rules. Thus, if the bills of lading meet the requirements established in the *Ocean Lynx* test, COGSA will apply.

█ The first prong of the Eleventh Circuit test requires that the shipper give adequate notice of the $500 liability limitation by including a paramount clause in the bill of lading expressly adopting the provisions of COGSA. Plaintiffs based much of their oral argument on interpretation of the word "expressly." They argued that "expressly" means that the terms "COGSA" or "Carriage of Goods by Sea Act" must appear in the paramount clause. This argument represents an unreasonably narrow reading of the *Ocean Lynx* Court's holding. In fact, an examination of the cases cited by the Eleventh Circuit in support of prong one of its test shows that the Court's intention was to warn shippers that COGSA contains a $500 liability limitation and to inform them that they may avoid the limitation by declaring excess value and paying an increased sum. The decision was not, as Plaintiffs claim, an attempt to force carriers to describe in explicit detail the applicable law in the paramount clause of every bill of lading.

The first case cited by the Eleventh Circuit in *Ocean Lynx* held that the COGSA $500 liability limitation applied because the bill of lading in that case stated that it would have effect "subject to the provisions of the Carrier [sic] of Goods by Sea Act." *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 420 (5th Cir.1981). While it is true that COGSA was referred to by name in the bill of lading, the entire focus of that case was whether or not incorporating COGSA, without giving detailed descriptions of its various provisions, was sufficient to invoke the $500 liability limitation which did not otherwise appear on the bill of lading. In other words, the Court was concerned with the *notice* aspect of the case, not with the specific manner in which COGSA was denominated in the paramount clause.

The paramount clause in *Brown & Root* was a very basic one, specifying simply that the contract was subject to COGSA. However, in international shipping it is not uncommon for large carriers to use bills of lading with a hierarchical paramount clause like the one used for the Archigetis ship-

---

**6.** Subclause one.

**7.** Subclause two.

**8.** Subclause three.

**9.** Subclause four.

**10.** Because subclause three applies, there is no need to examine subclause four which simply defaults to the Hague Visby Rules.

ment. This allows the carrier to use the same bill of lading form for all of its contracts, rather than having to work up a special bill for each individual shipment. It seems unlikely given the language of the decision that the Eleventh Circuit meant to require a dramatic change in the practice of international carriers by forcing them to insert the specific name and each applicable provision of "the corresponding legislation" in every bill of lading.

The other case cited by the *Ocean Lynx* Court in support of the first prong of its test had even less to do with the specific terminology used in the paramount clause. *General Electric Co. v. M/V Nedlloyd,* 817 F.2d 1022 (2nd Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 661 (1988). In fact, it had nothing to do with paramount clauses at all. Instead, the Court in that case was also concerned with the notice and opportunity requirements. *Nedlloyd,* 817 F.2d at 1028–29.

■ It seems clear that the purpose of prong one of the *Ocean Lynx* test is to ensure that shippers are notified that when COGSA applies to a contract the carrier can sharply limit its liability for lost or damaged cargo. The second prong of the test requires that when COGSA applies, the shipper must be afforded the opportunity to protect himself from the liability limitation by declaring excess value and paying a higher rate.

The second part of the *Ocean Lynx* test was undoubtedly satisfied by the carrier in the instant case. Plaintiffs seem to argue that the liability limitation provision must be set out *in the paramount clause itself.* This is clearly wrong. As discussed *supra,* the paramount clause is a general provision which identifies the governing law. It is not a place to delineate specific provisions of that law.

In *Ocean Lynx,* as in *Brown & Root* and *Nedlloyd,* the Court found that the carrier

can meet the notice and fair opportunity requirements simply by incorporating COGSA into the bill of lading and publishing a tariff with the Federal Maritime Commission that provides the shipper with the opportunity to declare excess value. *Ocean Lynx,* 901 F.2d at 939. In *Ocean Lynx,* the phrase "$500 liability limitation" or its equivalent did not appear anywhere on the face of the bill of lading, and yet the Court held the notice and opportunity requirements were met.

## II. Clause Eighteen: Limitation of Liability

In the instant case, the carrier has gone far beyond what is required for notice and opportunity. In capital letters on the face of the bills of lading it states: "VALUE OF GOODS MAY BE DECLARED PROVIDED MERCHANT GIVES PRIOR NOTICE AND AGREES TO PAY GREATER FREIGHT AD VALOREM BASIS SEE CL 18 ON BACK HEREOF."

Clause 18 addresses "Limitation of Value" and explicitly spells out the $500 limitation on carrier liability in language almost identical to that used in COGSA [11]:

In case of any loss or damage to or in connection with goods exceeding in actual value $500 per package lawful money of the United States or in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or freight unit, on which basis the freight is adjusted and the Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per customary freight unit, unless the nature of the goods and a valuation higher than $500 shall have been declared in writing by the shipper upon delivery to the Carrier and inserted on this Bill of Lading and extra freight paid as required and in

**11.** Compare COGSA's limitation provision:
Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in

packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.
46 U.S.C.App. § 1304(5).

such case if the actual value of the goods per package or per customary freight unit shall exceed such declared value, the value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not exceed such declared value.

Plaintiffs' argument that they were not notified of the liability limitation and afforded the opportunity to declare higher value is therefore obviously without merit.

### III. Clause Nine: On–Deck Carriage

■ Plaintiffs argue that COGSA was not clearly and unambiguously extended to this contract for the on-deck carriage of five yachts. For COGSA to apply to an on-deck shipment, it must be plain from the face of the bill of lading both that this is a contract for on-deck carriage and that COGSA is to be applied. Clause nine of the bill of lading addresses on-deck carriage of goods, and makes clear that the carrier may limit its liability consistent with the terms of the bill of lading and applicable law, be it the Hague or Hague Visby Rules or "any such legislation," i.e., COGSA. Clause nine reads in relevant part:

> The goods may be stowed on or under deck. ... In respect of goods carried on deck all risks of loss or damage by perils inherent to such carriage shall be borne by the shipper or the consignee, but in all other respects the custody and carriage of such goods shall be governed by the terms of this Bill of Lading and provisions stated in the pertinent Hague Rules or Hague Visby Rules legislation notwithstanding any provision of such legislation which would otherwise exclude the application of the same to such goods. Where by any such legislation it is provided that the Rules shall apply to deck cargo if the Bill of Lading expressly so states, it is agreed for the purpose of this Bill of Lading that such Rules will apply to deck cargo only to the extent hereinabove provided.

It is undisputed that the contract at issue was one for on-deck shipment and was marked "ON DECK AT SHIPPER'S RISK." Clause nine appears approximately five inches below the paramount clause in the same column and on the same side of the page on the face of each bill of lading. Reading the two clauses together it is apparent that the parties agreed to extend COGSA's provisions to this contract.

### CONCLUSION

Taken as a whole, Clauses 3, 9, and 18 of the bills of lading evidence a clear intent to subject the parties to the COGSA $500 liability limitation. The bills of lading were short and the parties were all relatively experienced shippers. In fact, Miller Yacht Sales was previously involved in litigation on a very similar issue. *See Miller Yacht Sales, Inc. v. M/V Vishva Shobha*, 494 F.Supp. 1005 (S.D.N.Y.1980).

The outcome of this case may well have been different given a different factual situation. The Court does not mean to imply that a carrier would *never* be required to spell out more explicitly what law and what provisions of that law apply to a given contract. In fact, the most prudent policy would of course be to include such detailed language in every bill of lading. However, such a requirement would unduly burden large international shipping companies and their clients who routinely use form bills of lading in their dealings. Here Plaintiffs made a business decision not to pay a higher rate for increased coverage, and they should not now be permitted to avoid the consequences of that decision.

Having twice heard argument of counsel and being otherwise fully advised in the premises, it is hereby

ORDERED and ADJUDGED that this Court's January 8, 1991 Omnibus Order granting Defendants partial summary judgment on the liability limitation issue is AFFIRMED.

The remainder of the analysis in the Order—including that concerning the definition of a "package"—remains sound, and therefore need not be addressed here.

DONE and ORDERED.