**ALTADIS USA, INC., individually and for the use and benefit of Gulf Life Insurance Co., Plaintiffs,**

v.

**NPR, INC., doing business as Navieras de Puerto Rico; B–Right Intermodal Transport, Inc.; B–Right Trucking, Inc.; Key Bank, N.A.; National Union Insurance Company of Pittsburgh, Defendants.**

No. 3:02–CV–660–J–16MCR.

United States District Court, M.D. Florida, Jacksonville Division.

Oct. 26, 2004.

Order Denying Reconsideration Nov. 10, 2004.

Gustavo Adolfo Martinez, Sullivan & Company, Jacksonville, FL, for Plaintiffs.

Julie K. Rannik, Vincent O'Brien, DeOrchis, Hillenbrand & Weiner, LLP, Miami, FL, for Defendants.

Mattox S. Hair, Law Office of Mattox S. Hair, Jacksonville, FL, pro se.

Lindsey C. Brock, III, Rumrell, Costabel, Warrington & Brock, LLP, Richard G. Rumrell, Rumrell, Costabel, Warrington & Brock, LLP, St. Augustine, FL, for Defendants and Counter Claimants.

Allan E. Wulbern, Stephen D. Busey, Smith, Hulsey & Busey, Jacksonville, FL, for Defendants and Cross Defendants.

Hyman Hillenbrand, DeOrchis, Hillenbrand & Weiner, LLP, Miami, FL, for Defendants, Cross Defendants, Counter Claimant and Cross Claimant.

G.J. Rod Sullivan, Jr., Sullivan & Company, Thomas Albert Boyd, Jr., Boyd & Sutter, P.A., Jacksonville, FL, for Plaintiffs and Counter Defendants.

## ORDER

JOHN H. MOORE, II, District Judge.

Before the Court is Altadis USA, Inc.'s ("Altadis") Motion for Entry of Judgment Against National Union Insurance Company in Accordance with Ohio Statute 3929.06 or Florida Statute 627.4136 (Dkt. 191), to which National Union Insurance Company ("National") filed a Memorandum in Opposition (Dkt. 200). The parties have submitted documentary evidence to the Court, and the Court heard oral argument from the parties on October 12, 2004.

As there are only two remaining parties in this case [1], and the Court finds that there are no pending issues for a factfinder to decide during jury trial, the Court will also *sua sponte* revisit and reconsider its previous Order (Dkt. 165) denying National's Motion for Summary Judgment (Dkt. 105). The Court will therefore now rule on the remaining legal issues in this case and enter judgment accordingly.

## I. Background

The Plaintiffs filed their fifteen-count Second Amended Complaint (Dkt. 84) on February 13, 2004, stating claims against the various Defendants for breach of contract, third party beneficiary of contract, negligence, breach of fiduciary duty, conversion, theft, and intentional interference with business relations. The claims arise out of a scheduled July 3, 2001 shipment of 2,505 cartons of cigars from Puerto Rico, where they were delivered to common carrier NPR (Navieras), to Tampa, Florida, where they were to be received by Altadis, which was the holder of the bill of lading and owner of the shipment.

According to the Plaintiffs, NPR agreed to ship the cigars to Tampa, but it failed to deliver the cargo in like condition, as the entire shipment was instead lost by the Defendants. Altadis alleges that it also contracted with B–Right Intermodal Transport, Inc. and B–Right Trucking, Inc. (collectively referred to as "B–Right") on July 6, 2001 to transport the 40–foot container of cigars from the NPR terminal at Blount Island, Jacksonville, Florida, to the Altadis warehouse in Tampa, Florida. The cargo was allegedly stolen somewhere between Jacksonville and Tampa when it was negligently left by B–Right in an unattended parking lot over the weekend.

The Plaintiffs further allege that B–Right received settlement funds for the lost cargo from its insurance company, National. These funds were allegedly to be paid to Altadis, but B–Right failed to pay the settlement to Altadis as the owner of the lost shipment. In Count XV of the Second Amended Complaint, the only count remaining in this case, the Plaintiffs assert a right to receive these funds as a third party beneficiary of the insurance contract between B–Right and National. The Plaintiffs allege that B–Right nonetheless kept possession of the funds and refused to pay Altadis or hold the funds in trust for its benefit, instead ultimately depositing the funds in B–Right's regular checking accounts at Key Bank.

Other than the third party beneficiary of contract theory, there are no other causes of action that have been properly pled against National in this case. However,

---

[1]. Altadis is pursuing its claim for the benefit of its insurer, Gulf Life, which has allegedly already paid Altadis' claim for the cargo loss in this case. As discussed below, a default judgment was previously entered against the B–Right entities. Altadis has settled its claims against Defendant NPR, and the Court previously granted summary judgment in favor of Key Bank (Dkt. 165).

the Plaintiffs moved at oral argument for leave to further amend their Complaint to properly state their current legal theories against the insurance company. The Plaintiffs claim that these legal theories only recently developed and ripened upon judgment being entered against B–Right (pursuant to a default, see Dkts. 90, 131). Accordingly, they claim that the parties have stipulated to the remaining outstanding legal issues—namely, whether Altadis can now proceed against the insurer (National) for payment of B–Right's judgment in a "supplemental" action or as part of this action pursuant to Florida or Ohio law. In effect, it appears that the Plaintiffs have abandoned their third party beneficiary of contract theory against National, instead now arguing that they have the right to recover the judgment entered against B–Right directly from National as its insurer.

The Plaintiffs argue that they are entitled to judgment as a matter of law against National under either Section 627.4136, Florida Statutes, or Section 3929.06 of the Ohio Code. They claim that in any event, they gained the right to have a judgment entered against National thirty days after the entry of the default judgment against the B–Right companies. They argue that they now have a procedural right to proceed directly against National to enforce the judgment against its insured. The Court will address these arguments further below.[2]

## II. Discussion

### A. *Altadis' Motion for Entry of Judgment Against National*

Altadis argues that thirty days after entry of the judgment against B–Right, it gained the substantive right to have judgment entered directly against National under the procedural method laid out in the Ohio statute. Section 3929.06 of the Ohio Code provides that if a final judgment is entered for the Plaintiff's loss of property, the Plaintiff "is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment." The statute states that this right accrues if, within thirty days after entry of the final judgment, the insurer has not paid the remainder of the policy limits to the judgment creditor, and the Plaintiff points out that a "supplemental complaint" against the insurer is allowed to proceed "in the same manner as the original civil action" against the insured. Section 3929.06, Ohio Code. The insurer is allowed to assert any coverage defenses it would have against the insured in this supplemental action.

Altadis therefore argues that since thirty days have passed since judgment was entered against B–Right, and Altadis has not been paid for its loss, it is now entitled to pursue National for a judgment up to the limits of its policy with B–Right, or up to $500,000. Altadis argues that Florida law is similar to Ohio law, allowing an injured party to seek a judgment directly against the insurer as a third party beneficiary, and procedurally providing for the joinder of the insurer immediately upon entry of a final judgment against the insured. *See, e.g., Everglades Marina, Inc. v. American Eastern Development Corp.*, 374 So.2d 517 (Fla.1979); Fla. Stat. § 627.4136(4). In other words, while Ohio law provides for a "supplemental action"

---

**2.** The Defendant initially argues that the Plaintiffs' current Motion should be stricken by the Court as an untimely dispositive motion. As the Court explained at oral argument, however, there are no factual issues remaining in this case, and both parties have continued to pursue legal theories in their filings and motions in limine. Accordingly, the Court denied the Defendant's attempt to strike the Plaintiffs' current motion.

against the insurer, Altadis claims that Florida law simply allows for joinder of the insurer in the original action once a judgment is entered.

In either event, Altadis claims that it is now entitled to judgment against National, as judgment has been entered against B–Right for the loss and all issues as to its liability for the cargo loss are now res judicata. Therefore, Altadis claims that National is collaterally estopped from "relitigating" issues as to its insured's liability, since it chose not to provide a defense for B–Right prior to a judgment being entered. *See, e.g., Grange Mut. Cas. Co. v. Rosko,* 146 Ohio App.3d 698, 767 N.E.2d 1225 (2001); *Motorists Ins. Cos. v. BFI Waste Mgmnt.,* 133 Ohio App.3d 368, 728 N.E.2d 31 (1999); *Patterson v. Tice,* 91 Ohio App.3d 414, 632 N.E.2d 962 (1993).

Furthermore, Altadis claims that there are no coverage defenses that National could have raised against B–Right, or the defenses have now been waived because National paid B–Right Trucking $375,012.22. *See, e.g., Leader Nat'l Ins. Co. v. Eaton,* 119 Ohio App.3d 688, 696 N.E.2d 236 (1997); *Sanderson v. Ohio Edison Co.,* 69 Ohio St.3d 582, 635 N.E.2d 19 (1994). Altadis argues that this payment to B–Right Trucking was made in error, as that company did not suffer any loss and was not the actual carrier of the shipment.[3]

Nonetheless, Altadis argues that the error does not create a coverage defense or prevent National from being liable for payment up to its $500,000 policy limit to the correct party, even though it has already paid the wrong party. Altadis accordingly urges the Court to enter judgment in its favor directly against the insurer, National, for payment of the judgment against B–Right up to the $500,000 policy limits.

National, of course, vehemently argues that entering judgment in favor of Altadis is entirely inappropriate in this case, as there is no legal basis for entry of such a judgment and the insurance company has completely met its obligations under its policy with the insured. Initially, National points out that the only claim against it is a third-party beneficiary claim in Count XV of the Second Amended Complaint, and therefore Altadis is now improperly attempting to pursue causes of action under Florida and Ohio law that were never pled in this action. As neither Ohio nor Illinois law recognize a cause of action based on a third-party beneficiary of insurance contract theory, National therefore argues that Altadis' Motion must be denied and its sole claim against National must be dismissed. Dkt. 200, pg. 2.[4]

Moreover, even though Altadis claims that the parties have stipulated to its current legal claims and moves to amend the

---

**3.** Altadis marshals great effort to differentiate the B–Right entities, arguing that while B–Right Trucking is the owner of B–Right Intermodal, they are separate and distinct entities, and B–Right Intermodal is the actual carrier of the cigar shipment in this case. B–Right Trucking, the Plaintiff contends, was merely the owner of the vehicle involved, not the carrier of the shipment, and therefore should not under any condition have received payment for the loss of cargo. Moreover, National never received a release after payment. Altadis therefore argues that National is liable for this mistake and must now pay the judgment against B–Right Intermodal. The Court refers to both entities collectively as "B–

Right," however, because National correctly points out that B–Right Trucking is the parent company of B–Right Intermodal, and both entities were named insureds under the National policy. National also points out that both were run by the same president and officers, operated out of the same office, and while the insurance funds were paid to B–Right Trucking, they were used for B–Right Intermodal's expenses.

**4.** National points out that the insurance policy in this case was issued in Illinois and delivered to B–Right in Ohio, making either Illinois or Ohio the proper choice of laws in this action.

complaint, National argues that any amendment would be futile because Altadis cannot state a claim for judgment against the insurer under either Ohio or Illinois law. *Id.* at pp. 2–3; *see also Mar San v. Ins. Co. of North America,* 86 Ill. App.3d 64, 41 Ill.Dec. 471, 407 N.E.2d 969 (1980). National argues that Illinois law requires that the execution against the insured (B–Right) be returned unsatisfied prior to any direct action against the insurer, while the Ohio statute applies only to tortfeasors, and the only basis for the Plaintiffs' claims against B–Right is under the Carmack Amendment. *See* 215 IL. CS § 5/388; Ohio Rev.Code § 3929.06; *Kwait, McClatchy, Chaisson & Buchman, Inc. v. Expo Homes, Inc.,* 1980 WL 354323, 1980 Ohio App. LEXIS 13722 (1980); *Smith v. United Parcel Service,* 296 F.3d 1244, 1247 (11th Cir.2002); 49 U.S.C. § 11707(a)(1); *AIG Europe, S.A. v. M/V MSC Lauren,* 940 F.Supp. 925 (E.D.Va.1996). Accordingly, National argues that the Plaintiffs' Motion must be denied as there is no basis for either a direct or supplemental action against the insurer for cargo loss under the applicable law.

In addition, although Altadis attempts to claim that it is entitled to judgment under Section 627.4136, Florida Statutes, National asserts that there is no basis for application of Florida law. National points out that Florida's choice of law rules prohibit the application of Florida law, as the policy at issue in this case was issued in Illinois for delivery in Ohio. *See, e.g., Fioretti v. Mass. Gen. Life Ins. Co.,* 53 F.3d 1228, 1236 (11th Cir.1995); *Lumbermens Mut. Cas. Co. v. August,* 530 So.2d 293, 295 (Fla.1988). As such, National argues that there is no basis for judgment under Section 627.4136, Florida Statutes.

In any event, National argues that there is absolutely no basis for imposing liability for the judgment upon it, as it had no duty to defend B–Right in this action, and any

contractual duties it may have had were extinguished once it paid the proceeds to its insured and obtained a signed release of all rights from B–Right. National points out that the policy at issue in this case merely gives it the right to provide a defense for its insured, and as such the contract does not impose an affirmative duty upon National. *See, e.g., Ohio Cas. Ins. Co. v. Carman Cartage Co., Inc.,* 262 Neb. 930, 636 N.W.2d 862 (2001); *Centennial Ins. Co. v. Transitall Servs., Inc.,* 2001 WL 289879 (N.D.Ill.2001). Therefore, because National chose not to defend B–Right in this action (and in fact was never requested to do so by B–Right), but instead simply paid the claim to its insured, National argues that it had no further duty under the contract and there is no basis for liability for the judgment against B–Right. National also highlights the fact that B–Right breached its own duties by converting the funds for its own use instead of paying them to Altadis, and therefore Altadis cannot recover from National when its insured, B–Right, breached the policy provisions. *See also DeRosa v. Aetna Ins. Co.,* 346 F.2d 245, 247 (7th Cir.1965); *Reisman v. Delgado,* 117 Ill. App.3d 331, 73 Ill.Dec. 77, 453 N.E.2d 902, 904 (1983).

National also contends that the Sworn Statement in Proof of Loss, signed by B–Right requesting funds to be paid to it, demonstrates that National was discharged of any further duties and released from any further claims once it sent the check for $375,012.22 to B–Right. Dkt. 200, pg. 15. National argues that B–Right had an insurable interest in the policy, and therefore it was entirely proper for it to send the check directly to B–Right as its insured. Because National properly insured against B–Right's liability and then paid for that liability, it therefore argues that Altadis is not entitled to a judgment

against it to pay for the judgment previously entered against B–Right.

■ The Court finds that the entry of a judgment against National is not appropriate under either Florida or Ohio law. First, while Altadis attempts to classify the Florida statute regarding obtaining a judgment directly against the insurer as "procedural" in nature, and therefore applicable in this Court, the Court agrees with National that Florida law has no application to the claim against it, and therefore the only basis for Altadis' judgment would be the Ohio statute. Since Ohio is the place where the policy was delivered, and it is the only other basis upon which Altadis claims it is entitled to judgment, the Court must determine whether Altadis can pursue a judgment pursuant to Section 3929.06 of the Ohio Code. This determination is in accord with Florida's choice of law principles. *See, Fioretti,* 53 F.3d at 1236; *Lumbermens,* 530 So.2d at 295.

■ Moreover, although Altadis takes great pain to distinguish B–Right Trucking and B–Right Intermodal as separate entities, thereby enhancing its argument that the "wrong party" was paid by National, the Court does not find this argument persuasive. National correctly points out that both of the B–Right companies were insured under the subject policy, and Altadis does not dispute that B–Right Trucking was the whole owner of B–Right Intermodal. National also adds that both were run by the same president and officers, operated out of the same office, and both benefitted from the payment of the insurance proceeds. As such, the Court will not base the entry of judgment against National on some sort of mistake or error it allegedly made in paying the wrong entity. While B–Right Intermodal may have been the actual carrier in this case, payment was made to its parent (also an insured), and the insurance proceeds were used for the carrier's operating expenses.

Altadis' attempts to distinguish these entities for purposes of National's liability therefore lack merit.

In addition, National persuasively argues that because the only claim against it is in Count XV of the Second Amended Complaint (third party beneficiary of contract), Altadis is attempting to improperly file an untimely dispositive motion based on theories that have never been properly pled in this case. National asserts that this attempt by Altadis to skirt around the procedural requirements in this case is because it realizes that neither Ohio nor Illinois law would support a claim based on a third party beneficiary of contract theory. Since Altadis has moved to amend the pleadings and contends that the parties have acknowledged the remaining legal theories in this case, however, the Court will not deny Altadis' Motion solely on this procedural ground. Even so, the Court notes that it provides additional persuasive justification for the denial of judgment against National.

■ In any event, the Court agrees with National that Altadis has not demonstrated that there is a basis to impose liability on the insurer for B–Right's judgment under the Ohio statute. There is nothing to demonstrate that National had a duty to defend B–Right in this action prior to judgment being entered, and there is no evidence that B–Right ever requested such a defense. Therefore, the Court agrees that National properly paid its insured, B–Right, for the loss under the policy, and then obtained a release from B–Right. *See, e.g., Ohio Cas. Ins. Co.,* 636 N.W.2d at 862; *Centennial Ins. Co.,* 2001 WL at 289879. That fact that B–Right apparently converted the insurance funds for its own use instead of paying them to Altadis does not change the fact that National properly paid those funds to the named insured under its policy. *See DeRosa,* 346

F.2d at 247; *Reisman*, 73 Ill.Dec. 77, 453 N.E.2d at 904.

■ The Court also agrees that National did not legally pay the "wrong party," because B–Right, as its named insured, had an insurable interest in the policy. Courts have agreed that common carriers, such as B–Right in this case, can be held liable for shipments of goods, and therefore they have an insurable interest in the goods. Such an interest can be insured for the carrier's own benefit or for the benefit of the owner. *See, e.g.*, Couch on Insurance, § 42:16. In this case, while B–Right should have held the funds in trust for Altadis, it had its own insurance policy with National, which properly paid the funds directly to B–Right. The Court therefore cannot hold National liable for the improper conduct of B–Right and the subsequent judgment entered against it. The Court will accordingly deny Altadis' Motion for Entry of Judgment.[5]

**B.** *National's Motion for Summary Judgment*

Although the Court previously denied National's Motion, it has indicated to the parties that since only legal issues remain in this case, it is appropriate to return to National's arguments for judgment as a matter of law to determine which party is entitled to judgment in this case. National previously argued that judgment should be granted in its favor because under Ohio law, Altadis could not seek direct damages against National as a non-insured under a policy held solely by B–Right. *See, e.g., Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089 (11th Cir.2004); *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235–36 (11th Cir.1995); *Kwait, McClatchy, Chaisson & Buchman, Inc. v. Expo Homes, Inc.*, 1980 WL 354323, 1980 Ohio App. LEXIS 13722 (1980).

National argued that the Plaintiffs are not third-party beneficiaries under the policy of insurance, and therefore National owed no duty to these non-insureds. Similar to its arguments in response to Altadis' current Motion for Entry of Judgment, National previously claimed that its responsibility under the policy was discharged at the time it made payment to B–Right, its insured, without any objection from the Plaintiffs. According to National, B–Right notified the insurer of the theft of cigars on July 9, 2001, forwarding demand letters from both NPR and Altadis related to the lost cargo, which was valued at $375,012.22. In November 2001, B–Right then sent a letter to National requesting that the settlement check be made payable to B–Right, and National subsequently cut a check payable to B–Right in the amount of $375,012.22. National claims that Altadis' agent was made aware that payment was being made directly to B–Right, and he did not specifically object to this method of payment, even though he was aware that B–Right had an outstanding monetary dispute with NPR. Dkt. 105, pp. 5–6; Roberta Ansell Deposition; Ladner Deposition.

As neither the Plaintiffs nor NPR were parties to the insurance policy between B–Right and National, and neither were intended beneficiaries of this policy, National

---

**5.** National also persuasively argues that the Ohio judgment statute applies only to tortfeasors, and because the only basis for the Plaintiffs' claims against B–Right is under the Carmack Amendment, the Ohio statute cannot apply to this case. Although this may be an additional ground to deny Altadis' Motion, the Court notes that the claims in the Second Amended Complaint are based on B–Right's negligence, a tort, and National has not sought dismissal of those claims based on an improper legal theory or failure to state a claim. As such, the Court does not rely on this argument in denying Altadis' current Motion.

therefore claimed that they cannot seek breach of contract damages based on its failure to pay the proceeds directly to Altadis and/or NPR. National pointed to the policy as explicitly stating that no party other than the insured shall benefit from the insurance, and any settlement of losses will be solely between the insurer and the insured, with the insured retaining the "privilege, but not the obligation," to settle its loss with the owner of the cargo. Dkt. 105, pp. 7–8; *see also Brockway–Smith Co. v. Boston & Maine Corp.,* 497 F.Supp. 814 (D.Mass.1980). As such, National concluded that any obligations it had under the contract were properly extinguished upon payment of the settlement proceeds to its named insured, B–Right. Dkt. 105, pp. 12–13; *see also Bennett v. Swift & Co.,* 170 Ohio St. 168, 163 N.E.2d 362 (1959).

■ Although the Court previously held that issues of fact remained to be decided as to the law that would apply, and as to whether National properly made payment to B–Right, the Court now finds that National did make proper payment for the loss to its insured, B–Right. There being no basis for Altadis to obtain a judgment against National under Ohio law, as explained above, summary judgment in favor of National is now appropriate. National correctly points out that Altadis has presented no authority to allow this Court to hold that it was a third-party beneficiary entitled to recover under the insurance contract under Ohio law, and therefore there is no legal basis to support Count XV of the Second Amended Complaint.

As explained above, Altadis has presented no legal authority or factual evidence to demonstrate that National should be liable for B–Right's judgment when the insurance company simply paid its insured for the loss as dictated by its policy with B–Right. Nor has Altadis presented any evidence to show that there was an agreement between National and its insured

that payment would be made to Altadis as owner of the cargo and third-party beneficiary of the policy. In short, as highlighted above in discussing the Plaintiffs' current Motion, the Court has no justification for holding National liable for failing to either pay the $375,012.22 in proceeds directly to Altadis, or for failing to ensure that the settlement funds were paid to Altadis. While these options most certainly would have avoided this drawn-out litigation, particularly if National had simply listed Altadis' or NPR's name on the settlement check, there is no basis for the Court to now impose liability for B–Right's judgment upon National merely because it failed to take a more prudent route in settling the claim for cargo loss. Judgment will therefore be entered in National's favor.

Accordingly, upon due consideration, it is hereby **ORDERED and ADJUDGED** that:

1. Altadis USA, Inc.'s Motion for Entry of Judgment Against National Union Insurance Company in Accordance with Ohio Statute 3929.06 or Florida Statute 627.4136 (Dkt. 191) is **DENIED**.

2. The Court's previous Order (Dkt. 165) denying National's Motion for Summary Judgment is hereby **VACATED in part** in that National's Motion (Dkt. 105) is hereby **GRANTED**. Separate judgment will be entered accordingly.

3. The following pending motions previously filed by the parties in advance of trial in this case are hereby **DENIED as moot**: Dkts. 153, 156, 171, 172, 173, 174, 175, 176, 177, 178, 179, and 186.

### ORDER ON MOTIONS

Before the Court is the Plaintiffs' Motion for Rehearing and Motion for Relief from Order Granting National Union's Motion for Summary Judgment and Denying

Plaintiffs' Motion for Judgment and Request for Ruling on Motion to Supplement Pleadings (Dkt. 216). In effect, the Plaintiffs are requesting reconsideration of the Court's Order pursuant to Rule 59, Federal Rules of Civil Procedure, followed by relief from that Order pursuant to Rule 60, Federal Rules of Civil Procedure.

The Court finds that reconsideration of its previous Order (Dkt. 214) is not warranted. Motions for reconsideration under Rule 59, Federal Rules of Civil Procedure, are only granted in rare circumstances to "correct manifest errors of law or fact or to present newly discovered evidence." *In re Managed Care Litigation,* 2002 WL 1359734 (S.D.Fla.2002); *Z.K. Marine v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla.1992). The Plaintiffs must present strong reasons for why the Court should reconsider its prior decision, setting forth facts or law of a "strongly convincing nature to induce the court to reverse its prior decision." *In re Managed Care,* 2002 WL 1359734, at *1; *Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla.1994); *Scelta v. Delicatessen Support Svcs.,* 89 F.Supp.2d 1311, 1319 (M.D.Fla.2000). A motion for reconsideration is not a vehicle to present authorities available at the time of the court's first decision or to simply reiterate arguments previously made. *Z.K. Marine,* 808 F.Supp. at 1563. As such, motions under Rule 59—to be used only when a court has made a manifest error of fact or law—are rarely granted. *See id.*

Here, the Plaintiffs' current Motion simply reiterates and reargues the same issues they previously discussed in conjunction with National Union Company of Pittsburgh's ("National") Motion for Summary Judgment (Dkt. 105), including arguments made at oral argument before the Court and therefore considered by the Court prior to making its ruling in National's favor. The Plaintiffs further attempt to raise bases for their claims against National which should have, and could have, been previously raised. *See id.* The Plaintiffs certainly express dismay with the Court's Order granting judgment in favor of National, and they again attempt to argue that they should now be allowed (for the *third time*) to amend their pleadings in an attempt to state claims against National.

Nonetheless, the Court has already found that there is no basis for this lawsuit against National, and the Plaintiffs have offered nothing to justify reconsideration of the Court's previous Order. Accordingly, upon due consideration, the Plaintiffs' Motion for Rehearing and Motion for Relief from Order, and Request for Ruling on Motion to Supplement Pleadings (Dkt. 216) is **DENIED.**