BLANCO GMBH + CO. KG, Plaintiff,

v.

VLANCO INDUSTRIES, LLC, G–Tech–I, Inc., and Vito Antonio Laera, Defendants.

Case No. 12–61580–CIV.

United States District Court, S.D. Florida.

Signed Jan. 21, 2014.

Order Granting Reconsideration in Part May 21, 2014.

Ami Bhatt, Bruce S. Londa, Danielle M. Defilippis, Jeanne Hamburg, Norris,

McLaughlin & Marcus, P.A., New York, NY, Allison Jeanne Cammack, Gunster Yoakley & Stewart, P.A., Miami, FL, Scott Warren Dangler, Gunster Yoakley & Stewart, Fort Lauderdale, FL, for Plaintiff.

Diana Waterous Centorino, Diana Waterous Centorino, Francis Lawrence Kubler, Oltman Flynn & Kubler, Fort Lauderdale, FL, for Defendants.

Vito Antonio Laera, Ft. Lauderdale, FL, pro se.

### AMENDED ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ROBIN S. ROSENBAUM, District Judge.

This matter is before the Court on Plaintiff's Motion to Re-open and for an Order to Show Cause [ECF No. 79], Plaintiff's Second Motion for Order to Show Cause [ECF No. 95], Defendant's Motion for Order to Show Cause [ECF No. 125], Plaintiff's Motion for Preliminary Injunction [ECF No. 126], Plaintiff's Motion for Default Judgment [ECF No. 153], and Defendant's Motion for Default Judgment [ECF No. 157], which were previously referred to the Honorable Patrick M. Hunt for a Report and Recommendation. Judge Hunt issued a Report and Recommendation on all of the Motions [ECF No. 185], and Defendant Laera has filed objections to the Report and Recommendation [ECF No. 189]. Plaintiff has also filed Objections [ECF No. 188]. For the reasons set forth below, the Court overrules Defendant's Objections, sustains in part and overrules in part Plaintiff's Objections, and adopts Judge Hunt's Report and Recommendation.

### I. Background

Plaintiff Blanco GmbH + Co. KG brought this action against Defendants Vlanco Industries, LLC, G–Tech–I, Inc.,

and Vito Antonio Laera, asserting claims for trademark infringement, cyber-squatting, and unfair competition. The parties ultimately reached a settlement, and the Court entered a Final Judgment Upon Consent [ECF No. 76], in which the Court retained jurisdiction to enforce the terms of the parties' agreement. The various motions addressed by the Report and Recommendation relate to various issues arising after entry of the Consent Judgment.

### II. Discussion

#### A. Plaintiff's Emergency Motion for Preliminary Injunction [ECF No. 126]

Plaintiff moved for the entry of a preliminary injunction on the grounds that Laera purportedly impersonated Plaintiff and its intellectual property counsel, Franka Kuschnirek, by changing the domain-name account of a GoDaddy domain name registrar to falsely reflect Plaintiff and Kuschnirek as the account owners. *See* ECF No. 126. Judge Hunt recommended that the Motion be denied because Plaintiff failed to satisfy the elements necessary for a preliminary injunction. The Court agrees. In particular, Plaintiff has failed to show that it lacks an adequate remedy at law or that it will suffer irreparable injury if its motion is not granted.

The purpose of a preliminary injunction is to restrain conduct "in those extraordinary situations where irreparable injury might result from delay or inaction." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1133 (11th Cir. 2005) (citing *United Bonding Ins. Co. v. Stein*, 410 F.2d 483, 486–87 (3d Cir.1969)). Because its sole function is to forestall future harm, injunctive relief is "completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law." *Id.* As such, even if Defendant wrongfully impersonated Plaintiff, no

indication exists that Defendant's alleged wrongdoing is ongoing. Thus, no threat of irreparable injury exists. To the extent that Plaintiff seeks relief from any harm imposed by Defendant's past conduct, Plaintiff may pursue a legal remedy; hence, equitable relief is barred. Plaintiff's Motion for Preliminary Injunction is therefore denied.

### B. Plaintiff's Motions for Contempt [ECF Nos. 79, 95]

#### 1. Plaintiff's Motion to Re–Open and for an Order to Show Cause [ECF No. 79]

Plaintiff requests that the Court find Defendants in contempt of the parties' Consent Judgment. ECF No. 79. In this regard, Plaintiff avers that Defendants (i) filed three applications with the United States Trademark Office containing prohibited designations; (ii) registered fifty-five new domain names containing prohibited designations; (iii) re-directed a number of domain names to a website using the prohibited designation "BLANCO;" and (iv) refused to cooperate in the transfer of certain domain names and transferred ownership of such domain names to third parties. ECF No. 79 at 2–3. In the Report and Recommendation, Judge Hunt found that Plaintiff presented sufficient evidence showing that Defendants, or persons acting in concert with Defendants, violated, and continue to violate, the terms of the Consent Judgment. The Court agrees with Judge Hunt's determination.

The Consent Judgment provides, in pertinent part, that

2. Defendants, their officers, servants, agents, employees, attorneys, and representatives, and/or anyone acting in active concert or participation with any or all of them, are hereby permanently restrained and enjoined from actively engaging in any of the following acts:

(a) applying to register with the U.S. Trademark Office and/or using the Infringing Marks and/or any other slogan, name, or mark confusingly similar to the BLANCO Marks, including, without limitation, VALANCO, VIANCO, VLANCO, or BLANCO, but excluding VILANCO and VALCO, which the Defendants may use

. . .

(c) registering any domain name which consists of or incorporates any slogan, name or mark confusingly similar to the BLANCO Marks, including, without limitation VALANCO, VIANCO, VLANCO, or BLANCO, but excluding VILANCO and VALCO, which the Defendants may use . . . .

ECF No. 76 at 2–3. After entry of the Consent Judgment, a third party, Robert Johnson, filed trademark applications that included the term "VLANCO" and registered domain names containing the terms "BLANCO," "VIANCO," and "VLANCO"—all of which constitute prohibited designations under the Consent Judgment.

According to Plaintiff, Robert Johnson is either an alias of Laera or a person acting in concert with Laera. In support of this contention, Plaintiff notes that Johnson's pending trademark applications are virtually identical to those originally filed by Defendants. Indeed, several of the specimens attached to Johnson's applications contain photographs that match those of Defendants' products included in the parties' Stipulation of Settlement and in Plaintiff's original Complaint. *See e.g.,* ECF No. 2–3; ECF No. 79–6; and ECF No. 79–8. Interestingly, the address listed for Robert Johnson in the trademark applications belongs to a leasing office, and no record exists of a Robert Johnson having lived or worked there.

As further evidence of Defendants' relationship with Robert Johnson, Plaintiff points to Defendants' redirection of their former domain names. The Consent Judgment required the registrars of Defendants' infringing domain names to transfer ownership of the domain names to Plaintiff. ECF No. 76 at 7. The Stipulation of Settlement, in turn, required Plaintiff to redirect those domain names to an IP address provided by Defendants for a limited transition period. ECF No. 79–6 at 6. The IP address provided by Laera, however, redirects users to "blancoamerica.us," a domain name registered to Robert Johnson.

Finally, Robert Johnson is currently listed as the registered agent for Defendant Vilanco Industries, LLC.[1] Laera initially formed the company and was its manager and authorized representative. A Google search of "Vito Laera and Robert Johnson" also revealed a now-inactive Facebook page for "ViLanco–Vito Laera and Company," which stated: "We ship internationally. Ask for Robert Johnson." ECF No. 79–2.

The Court agrees with Judge Hunt that Plaintiff has satisfied its burden of establishing a prima facie case of contempt. "A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Com'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir.1992). Whether or not Robert Johnson is merely an alias—although the facts strongly suggest that he is—ample support exists for the notion that Robert Johnson was at least an agent of Defendants and acted in concert with Laera, and the actions undertaken by them are clear violations of the Consent Judgment. Indeed, it appears that Defendants were utilizing Robert Johnson in order to attempt to circumvent the Consent Judgment.

█ Once a prima facie showing of contempt has been made, the burden shifts to the contemnor to show that he was unable to comply with the Court's order. *See Commodity Futures Trading Com'n*, 950 F.2d at 1529. In Laera's opposition brief to Plaintiff's Motion, Laera stated simply that he had "no information or belief" on the subject. *See* ECF No. 132 at 47. Additionally, he did not raise the issue in his Objections to the Report and Recommendation. The corporate Defendants have filed no response to Plaintiff's motion, and Judge Hunt therefore recommended that the Court grant Plaintiff's Motion for Default. *See* ECF No. 153. Because Laera and the corporate Defendants have failed to rebut Plaintiff's showing, the Court concurs with Judge Hunt that Defendants are in contempt of the Consent Judgment.

### 2. Plaintiff's Second Motion for an Order to Show Cause [ECF No. 95]

Plaintiff then filed a Second Motion for Contempt, alleging further violations of the Consent Judgment by Laera and third parties Joseph Napolitano, Vilanco Industries, Inc., and Robert Johnson. In particular, Plaintiff avers that Laera, in concert with these non-parties, sought to evade the Consent Judgment by filing an ancillary lawsuit and assigning certain trademark rights.

On May 21, 2013, Joseph Napolitano and Vilanco Industries, Inc., instituted an ac-

---

1. In January 2013, Defendant changed its name from "Vlanco Industries, LLC," to "Vilanco Industries, LLC." *See* Articles of Amendment to Articles of Organization, www.sunbiz.org.

tion against Laera in the United States District Court for the District of South Carolina. ECF No. 95–4. In that lawsuit, Joseph Napolitano and Vilanco Industries, Inc., sought a judgment against Laera for the same rights to the trademark and domain names that are encompassed in the Consent Judgment. The basis for the lawsuit involved several license agreements—executed after the commencement of this lawsuit—that purported to grant a license from Laera to Vilanco Industries, Inc., to use numerous trademarks and domain names that are the subject of the present action.

Plaintiff posits that the South Carolina lawsuit was merely an attempt by Laera to obtain an order allowing him to use the trademarks that he had been prohibited from using by the Consent Judgment. In support of this assertion, Plaintiff provides evidence that demonstrates a clear relationship between Laera, Joseph Napolitano, and Vilanco Industries, Inc. Specifically, Laera was the company's incorporator and was listed as the president and registered agent of Vilanco Industries, Inc., in various corporate documents, including the Articles of Dissolution. *See, e.g.,* ECF Nos. 95–5, 95–6. Joseph Napolitano also appears to be an officer of Vilanco Industries, Inc. ECF No. 95–7. The Florida address associated with both Joseph Napolitano and Vilanco Industries, Inc., is Laera's Florida homestead property, and the mailing address provided in the company's Annual Report corresponds to a property owned by Laera. *See* ECF No. 185 at 24. Based on these affiliations, Plaintiff maintains that Joseph Napolitano is an alias of Laera's, and the lawsuit was actually brought by Laera against himself in an effort to retain rights to the use of the prohibited designations.

In light of the evidence provided by Plaintiff, Judge Hunt determined that the South Carolina action was a subversive tactic designed to shirk the terms of the parties' settlement agreement. Judge Hunt noted that compelling evidence existed supporting the notion that Joseph Napolitano was merely an alias, but regardless, Plaintiff had presented enough evidence demonstrating that Joseph Napolitano and Vilanco Industries, Inc., had actual notice of the Consent Judgment and acted in concert with Laera in violating its terms. Moreover, Laera provided insufficient explanation for the license agreements and the ancillary lawsuit, and Laera did not address the issue in his Objections to the Report and Recommendation. As a result, the Court agrees that Laera, Joseph Napolitano, and Vilanco Industries, Inc., are in contempt of the Consent Judgment.[2]

Plaintiff has also presented evidence that Laera assigned a fifty-percent ownership interest in twenty-four trademarks to Robert Johnson, in violation of the parties' Stipulation of Settlement. This, along with the other evidence of Robert Johnson's affiliation with Laera, led Judge Hunt to again appropriately conclude that Robert Johnson had notice of the Consent Judgement and acted in concert with Laera in violating its terms.

### 3. Damages

The Consent Judgment provides for $150,000 in liquidated damages per viola-

---

**2.** A non-party may be held in contempt where the non-party violated an order in active concert or participation with a named party and had actual notice of the enjoined acts. *See* Rule 65, Fed.R.Civ.P.; *see also Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945) ("[Parties] may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.").

tion. ECF No. 76 at ¶ 10. Judge Hunt noted that "the evidence strongly indicates that [Laera] has been using fake names, shell companies, and subversive tactics to violate [the] agreement" and recommended that the Court award Plaintiff $150,000 per categorical violation. In this regard, Judge Hunt divided the violations into four categories, amounting to a total of $600,000 in liquidated damages, exclusive of attorney's fees and costs, for which Defendants, Robert Johnson, Joseph Napolitano, and Vilanco Industries, Inc., are jointly and severally liable. *See* ECF No. 185 at 33. Judge Hunt concluded that injunctive relief is unnecessary because the Consent Judgment already prohibits the conduct that Plaintiff seeks to enjoin. He further recommended that the Court direct the Registrars and Registries of the domain names containing prohibited designations identified in the Consent Judgment to transfer ownership of the domain names to Plaintiff and that the Court direct the United States Trademark Office to comply with the Consent Judgment and enter judgment in favor of Plaintiff in the opposition/cancellation proceedings identified in Schedule A of the Consent Judgment. The Court finds that the relief recommended is appropriate.

In its Objections to the Report and Recommendation, Plaintiff requests that the Court also direct the United States Trademark Office to abandon with prejudice the three pending trademark applications filed by Robert Johnson. As the Court has determined those applications to be in violation of the Consent Judgment, the Court grants Plaintiff's request. Plaintiff also asks the Court to award injunctive relief with respect to the license agreements between Laera, Vilanco Industries, Inc., and Joseph Napolitano. But such relief is unnecessary because the license agreements are already in direct violation of the Consent Judgment. As the conduct has previously been enjoined, no additional injunction is required.

Finally, the Court agrees with Judge Hunt that Plaintiff must continue to abide by the terms of the Consent Judgment. Despite Defendants' actions in this matter, the Court finds no good cause to relieve Plaintiff of its obligations at this time.

### C. Defendant Laera's Motion for an Order to Show Cause [ECF No. 125]

Laera asserts that Plaintiff failed to abide by the terms set forth in the Consent Judgment. Specifically, Laera appears to contend that Plaintiff wrongfully challenged Laera's use of certain designations because he believes that the Consent Judgment allows him to register any name or mark "confusingly similar to 'VILANCO' and 'VALCO.'" *See, e.g.*, ECF No. 125 at 4, 10, 11. This contention is wholly incorrect. The Consent Judgment makes clear that Defendants are permanently enjoined from registering any slogan, name, mark, or domain name that is confusingly similar to "BLANCO," with the *exception* of "VILANCO" and "VALCO." ECF No. 76 at 2–3. Thus, although Defendants are permitted to use the designations "VILANCO" and "VALCO," other confusingly similar designations are expressly prohibited. As a result, Plaintiff's challenges to Defendants' use of the prohibited designations were proper.

Laera also asserts that Plaintiff failed to redirect certain domain names as required by the Stipulation of Settlement. As noted by Judge Hunt, however, Plaintiff has already demonstrated its compliance with the parties' agreement. *See* ECF No. 185 at 36. For these reasons, Defendant's Motion for an Order to Show Cause is denied.

### D. Defendant Laera's Motion for Entry of Default Judgment [ECF No. 157]

Finally, Laera moves for an entry of default judgment against Defendants G–

Tech–I, Inc., and Vilanco Industries, LLC, because of their failure to respond to Laera's Counterclaim. Because Judge Hunt granted Plaintiff's Motion to Strike Defendant's Counterclaim [ECF No. 184 at 6], Laera's Motion was properly denied as moot.

### III. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Magistrate Judge Hunt's Report and Recommendation [ECF No. 185] is hereby **ADOPTED;**

2. Plaintiff's Emergency Motion for Preliminary Injunction [ECF No. 126] is **DENIED;**

3. Plaintiff's Motion to Re–Open and for an Order to Show Cause [ECF No. 79], Plaintiff's Second Motion for an Order to Show Cause [ECF No. 95], and Plaintiff's Motion for Entry of Default Judgment [ECF No. 153] are **GRANTED IN PART** as follows:

 a. Defendants Vito Antonio Laera, Vilanco Industries, LLC, and G–Tech–I, Inc., and Third–Party Defendants Robert Johnson, Joseph Napolitano, and Vilanco Industries, Inc., are in contempt of this Court's Final Judgment on Consent [ECF No. 76];

 b. Defendants Vito Antonio Laera, Vilanco Industries, LLC, and G–Tech–I, Inc., and Third–Party Defendants Robert Johnson, Joseph Napolitano, and Vilanco Industries, Inc., are jointly and severally liable for $600,000 in liquidate damages awarded to Plaintiff;

 c. The Registrar(s) and Registry(ies) of the domain names containing prohibited designations identified in the Consent Judgment and licensed

in the license agreements at issue in the South Carolina action discussed herein shall transfer ownership of the domain names to Plaintiff, including vlanco.cn and vlanco.it;

 d. The United States Trademark Office shall comply with the Consent Judgment and is directed to abandon with prejudice the following applications submitted by Robert Johnson: U.S. Trademark Application Serial Nos. 85/911,435 for "VLANCO" (stylized); 85/911,213 for "WWW.VLANCO.COM" (stylized), and 85/911,425 for "VLANCO.COM" (stylized);

 e. Plaintiff shall continue to comply with the Consent Judgment;

 f. Plaintiff is entitled to attorney's fees and costs associated with this action pursuant to the Consent Judgment;

4. Defendant Laera's Motion for an Order to Show Cause [ECF No. 125] is **DENIED;**

5. Defendant Laera's Motion for Entry of Default Judgment [ECF No. 157] is **DENIED.**

### REPORT AND RECOMMENDATION [1]

PATRICK M. HUNT, United States Magistrate Judge.

THIS CAUSE is before this Court upon several pending motions. The Honorable Robin S. Rosenbaum referred the motions to the undersigned for disposition or report and recommendation as appropriate. (ECF Nos. 80, 96, 128, 154); *see also* 28 U.S.C. § 636(b); S.D. Fla. L.R. Mag. R. 1. The undersigned has carefully reviewed the motions and responses thereto, all supporting documentation, the court file, and

---

1. This Report and Recommendation is entered contemporaneously with an Omnibus Order addressing non-dispositive motions in this case.

applicable law. Accordingly, the undersigned submits the following recommendations to Judge Rosenbaum for her consideration.

## BACKGROUND

The convoluted procedural history of this case only serves to complicate the relatively simple issue: whether the parties have complied with the Final Judgment Upon Consent (the "Consent Judgment") entered by this Court on April 4, 2013. *See* (ECF No. 76). As a precursor, this matter involves (i) Plaintiff Blanco GmbH + CO. KG ("Blanco"), a company that sells faucets, sinks, and kitchen utensils; (ii) the three original defendants in this action, Corporate Defendants Vlanco Industries LLC (now "Vilanco Industries LLC")[2] and G–TECH–I Inc., and Corporate Defendants' then president Vito Antonio Laera (collectively "Defendants")—all direct parties to a settlement agreement and consent judgment; and (iii) post-consent-judgment, contempt defendants Vlanco Industries Inc. (later "Vilanco Industries Inc.," and now dissolved), Robert Johnson, and Joseph Napolitano (collectively and independently, "Third–Party Defendant(s)"). Because of the complicated nature of the parties and companies involved in this case, the undersigned has attached hereto a Table compiled from information available on the Florida Department of State, Division of Corporations' ("FDSDC") website,[3] which summarizes the changes that have occurred with Defendant Laera's companies over the past six years.

On August 14, 2012, Plaintiff Blanco commenced this case against Defendants alleging claims of trademark infringement and counterfeiting under §§ 32(1) and 43(a) of the Trademark Act of 1946 (Lanham Act),[4] cyber-squatting under the Anti-cybersquatting Consumer Protection Act,[5] and unfair competition under the Florida Deceptive and Unfair Trade Practices Act.[6] (ECF No. 1). In sum, Plaintiff Blanco sought to enjoin Defendants from using or registering trademarks identical or confusingly similar to that of Blanco's brand, e.g., "Vlanco," including internet domain names. (ECF No. 1).

On September 17, 2012, approximately one month after Plaintiff filed the action against Defendants, Defendant Laera and Third–Party Defendant Vlanco Industries *Inc.* (not to be confused with Defendant Vlanco Industries *LLC*) executed a License Agreement ("License Agreement I") under South Carolina law. Defendant Laera's address was listed as 419 York Southern Road, Fort Mill, South Carolina 29715, and Vlanco Industries Inc.'s address was listed as 5960 SW 32 Terrace, Fort Lauderdale, Florida 33312—an address that Defendant Laera has represented as his own, via filings with the Florida Department of State and while testifying at an October 29, 2013 evidentiary hearing.[7] "Joseph Napolitano" purportedly

---

**2.** Vlanco Industries LLC was originally organized on November 16, 2011, as Blanco Industries LLC, but changed its name to Vlanco Industries LLC on March 12, 2012. Vlanco Industries LLC changed its name to Vilanco Industries LLC on January 29, 2013. *See Fla. Dep't of State, Div. of Corp.*, http:/www.sunbiz.org (click on "Document Searches" tab; then click "Corporation Trademark LLC LP" pull-down tab; then click "Inquire by Entity Name" pull-down tab; then search "Vilanco

Industries LLC"; then click on "Vilanco Industries LLC" for details).

**3.** http://www.sunbiz.org.

**4.** 15 U.S.C. §§ 1114(1), 1125(a) (2012).

**5.** 15 U.S.C. § 1125(d) (2012).

**6.** § 501.204, Fla. Stat. (2012).

**7.** This address is also currently listed as G–Tech–I Inc.'s principal address and current

signed the agreement on behalf of Vlanco Industries Inc. (ECF No. Ex. 2). The agreement granted Vlanco Industries Inc. "the exclusive license and right to use the marks VLANCO and all versions and derivations thereof ... in connection with plumbing related goods and associate merchandise products sold in connection therewith ... in the World...." (ECF No. 125 Ex. 2). Schedule A of License Agreement I incorporated a list of twenty-four marks that were licensed to Vlanco Industries Inc.[8] (ECF No. 125 Ex. 2 at 8).

That same day, Defendant Laera executed a "Trademark Assignment," conveying 50% ownership of the twenty-four subject trademarks listed in Schedule A of License Agreement I to Third–Party Defendant Robert Johnson. (ECF No. 125 Ex. 2 at 11). Defendant Laera's address was listed as 5960 SW 32 Terrace, Fort Lauderdale, Florida 33312, and Robert Johnson's address was listed as 4304 West Atlantic Boulevard, Coconut Creek, Florida 33066. (ECF No. Ex. 2 at 11). The transfer of interest did not include a reference to any consideration for the assignment or a signature by Robert Johnson.

On November 19, 2012, Judge Rosenbaum referred this case to Magistrate Judge Peter R. Palermo for mediation. (ECF No. 33). A settlement conference was scheduled for December 19, 2012 (ECF No. 34), but was later rescheduled for January 8, 2013 (ECF No. 51). On January 8, 2013, Plaintiff Blanco and Defendants entered into a Stipulation of Settlement (the "Stipulation"). (ECF No. 95

Ex. 1). The Stipulation provided, in part, as follows:

1. Upon the execution of this Stipulation, Defendants, their officers, servants, agents, employees, attorneys and representatives, and/or anyone acting in active concert or participation with any or all of them will refrain from:

(a) applying to register with the U.S. Trademark Office or any other trademark office throughout the world and/or using the Infringing Marks and/or any other slogan, name or mark confusingly similar to the BLANCO Marks, including, without limitation, VALANCO, VLANCO or BLANCO, excluding VILANCO and VALCO, which the Defendants may use;

(b) opposing, petitioning to cancel, or otherwise taking action against Plaintiff's U.S. and foreign trademark applications and registrations for the BLANCO Marks and/or any mark including the term BLANCO now pending or which may be filed in the future; and

(c) registering any domain name which consists of or incorporates any slogan, name or mark confusingly similar to the BLANCO Marks, including, without limitation, VALANCO, VLANCO or BLANCO, excluding VILANCO and VALCO, which the Defendants may use[.]

(ECF No. 95 Ex. 1 at 2–3). The Stipulation also required Defendant Laera to withdraw twenty-five trademark applications—which included the twenty-four

---

registered agent, Anna Mancini's address. Anna Mancini's role in these proceedings is addressed in more detail herein.

**8.** Schedule A of License Agreement I lists the serial numbers for the following marks: VALANCO, VLANCO, LINEA VLANCO, WWW. VLANCO.COM, LINEA CUCINA BY, LINEA

LAV BY, VLANCO FIRECLAY, VLANCO GRANIT, VLANCO INOX, VLANCO.DE, VLANCO.CN, VLANCO.EU, VLANCO.COM, VLANCO.IT, VLANCO.CA, VLANCO.US, VLANCO WHITE, and registration number 3588180 for VLANCO. *See* (ECF No. 125 Ex. 2).

marks listed in Schedule A of License Agreement I, in addition to BLANCO[9] and BLANCO.COM.PR[10]—within fourteen days of the date of execution of the Stipulation. (ECF No. 95 Ex. 1 at 3). Furthermore, the Stipulation provided as follows:

4. Defendants, their officers, servants, agents, employees, attorneys and representatives, and/or anyone acting in active concert or participation with any or all of them, shall not make any future application for registration of the marks covered by the Infringing Applications with respect to classes 6 (including, without limitation, clips for sinks and faucets); 20 (including, without limitation, for bathroom furniture and cabinets); 7 (including, without limitation, garbage disposals); 11 (including, without limitation, sinks and faucets), 21 (including, without limitation, kitchen utensils); 35 (retail store services) and 37 (including, without limitation, plumbing services);

5. Within fourteen (14) days of the date of execution of this Stipulation, Defendants, their officers, servants, agents, employees, attorneys and representatives, and anyone acting in active concert or participation with any or all of them, shall take all steps requested by BLANCO to enable the Registrar(s) of the following domain names (the "Infringing Domain Names") and any others including the term "blanco", "vlanco" or "valanco" to transfer the ownership of the Infringing Domain Names to BLANCO: <vlanco.com>, <lineablanco.us>, <blancogranitsinks.com>, <blancogranit.com>, <blancogranite.com>, <blancogranito.com>, <blanco.com.pr>, <blancoamerica.org>, <blancoamerica.net>, <vlanco.de>, <vlanco.cn>, <vlanco.eu>, <vlanco.it>, <vlanco.ca>, and <vlanco.us>. For a period of nine (9) months from the date of execution of this Stipulation, BLANCO shall redirect these domain names to an IP address provided in writing by Defendants to BLANCO, to the attention of Franka Kuschmirek, at franka.kuschmirck@blanco.de. After expiration of the nine (9) month period, BLANCO shall ensure the domain names do not link to any content for as long as BLANCO retains control of such domain names.

(ECF No. 95 Ex. 1).

Other pertinent aspects of the Stipulation were set out as follows: (i) Paragraph 6 permitted Defendants to use and register the terms "Vilanco" and "Valco" in connection with the marketing and sale of any goods and permitted a "Sell–Off Period" of nine months, within which Defendants could sell products bearing the mark "Vlanco"; (ii) Paragraph 8 acknowledged that violation of the Settlement would result in irreparable injury entitling Blanco to injunctive relief, damages, and reasonable attorney's fees and costs; (iii) Paragraph 12 referenced the simultaneous agreement to execute the Final Judgment Upon Consent attached to the Stipulation that would be entered by this Court; and (iv) Paragraph 17 states that the Stipulation is "binding upon the parties and their respective legal representatives, predecessors, successors, affiliates and assigns." (ECF No. 95 Ex. 1 at 8–11). The Stipulation was signed by Plaintiff's counsel, Defendants' counsel, and Defendant Laera, individually and in his capacity as President of Corporate Defendants. (ECF No. 95 Ex. 1 at 13).

---

**9.** U.S. Trademark Application Serial No. 85/454,669, for plumbing.

**10.** U.S. Trademark Application Serial No. 85/603,447, for online retail stores.

On January 10, 2013, Defendant Laera and Third–Party Defendant Vlanco Industries Inc. executed a "License Agreement Modification," acknowledging that "Vlanco" Industries Inc. had changed its name to "Vilanco" Industries Inc. (ECF No. 125 Ex. 2 at 13). The License Agreement Modification included an admission by Defendant Laera that he violated License Agreement I and his agreement to pay liquidated damages of ten million dollars. (ECF No. 125 Ex. 2 at 14). The FDSDC received notice of the name change from Defendant Laera on February 12, 2013, in which Defendant Laera also acknowledged ownership of Vilanco Industries Inc.[11]

On January 18, 2013, Judge Rosenbaum held a hearing regarding the parties' settlement and proposed judgment. (ECF Nos. 55, 58). Judge Rosenbaum ordered the parties to file a proposed consent judgment on or before February 7, 2013. (ECF No. 60). On January 29, 2013, Vlanco Industries LLC filed a notice of name change with the FDSDC, changing its name to Vilanco Industries LLC.

Several issues arose concerning the terms of the Stipulation before the parties could file a proposed consent judgment, which prevented the entry of a consent judgment. One issue was Defendant Laera's use of the mark "ViLANCO," instead of "VILANCO." Additionally, defense counsel sent a letter to Plaintiff Blanco's counsel, dated February 12, 2013, indicating that Plaintiff failed to redirect the domain names that Defendant Laera transferred to Plaintiff pursuant to the Stipulation. (ECF No. 132 Ex. 11). After various motions to schedule and reschedule further mediation, final mediation was held on March 25, 2013. *See* (ECF Nos. 61–71).

On March 25, 2013, at final mediation, the parties executed an Addendum to Stipulation of Settlement (the "Addendum"), wherein the parties modified the Stipulation as follows: (i) Paragraph 2 was amended to include seven more trademark applications[12] that Defendant Laera agreed to withdraw within fourteen days of the date of the Addendum; (ii) Paragraph 5 was amended to increase the period within which Blanco would redirect internet traffic to an IP address for Defendants' products—from nine months to fourteen months; (iii) Paragraph 12 was updated to contemplate a Final Judgment of Consent consistent with the Stipulation and the Addendum; (iv) Paragraph 20 was added to include a notice-of-breach requirement prior to initiating any enforcement action; and (v) Paragraph 6 was replaced to state as follows:

> BLANCO shall consent to Defendants' use and registration of the terms VILANCO and VALCO in all capital letters, with equidistant spacing between letters, and each of the letters of the same size and dimensions; in all lower case letters, with equidistant spacing be-

**11.** *See Fla. Dep't of State, Div. of Corp.*, http://www.sunbiz.org (click on "Document Searches" tab; then click "Corporation Trademark LLC LP" pull-down tab; then click "Inquire by Entity Name" pull-down tab; then search "Vlanco Industries Inc."; then click on "Vlanco Industries Inc."; then view PDF image of document titled "Name Change" filed on February 12, 2013).

**12.** U.S. Trademark Application Serial Nos. 85/714,296 "VALANCO" for sinks and fau-
cets; 85/826,019 "ViLANCO" (stylized) for plumbing fittings and fixtures; 85/825,660 "ViLANCO" (stylized) for sinks and faucets; 85/820,617 "VIANCO" for online retail store services in the field of kitchen and bathroom sinks, faucets, and cabinets; 85/820,611 "VIANCO" (stylized) for sinks and faucets; 85/820,599 "vianco" for sinks and faucets; and 85/820,627 "vianco" for chopping board for kitchen use. (ECF No. 95 Ex. at 2).

tween letters, and each of the letters of the same size and dimensions; or with the "V" capitalized and the remaining letters in all lower case, with equidistant spacing between letters, with such lower case letters of the same size and dimensions. Defendants shall make all reasonable efforts to remove use of the term ViLANCO in the browser bar of Defendants' Facebook page. In the event Defendants are unable to modify this use of ViLANCO in the Facebook browser bar, BLANCO consents to this individual use of the term ViLANCO. . . . Additionally, Defendants shall not use or register in connection with the marketing, sale or distribution of any of their VILANCO/VALCO products any form of stylization of those terms substantially similar to that depicted in Exhibit A thereto and shall not use the color blue for the VILANCO/VALCO designations · except (i) in combination with other colors or (ii) if where the use of the color blue is dictated by the platform in which the mark is being used and cannot be changed by Defendants, i.e., use of blue text by Facebook. BLANCO consents to Defendants' use of the form of stylization depicted in Exhibit B. Defendants shall not use any variation of VILANCO not set forth in this paragraph without Plaintiff's prior written permission. For a period of fourteen (14) months from the date of execution of this Addendum (the "Ex tended Sell–Off Period"), BLANCO shall consent to Defendants' sale of products bearing the mark VLANCO. After expiration of the "Extended Sell–Off" Period, Defendants agree to cease sale of products bearing the mark VLANCO.

(ECF No. 95 Ex. 2 at 2–7). Plaintiff's counsel, Defendants' counsel, and Defendant Laera, individually and in his capacity as President of Corporate Defendants,

signed the Addendum. (ECF No. Ex. 2 at 7).

On April 4, 2013, this Court entered the Consent Judgment (ECF No. 76) (the "Consent Judgment") and the case was closed. However, this Court retained jurisdiction for "the limited purpose of enforcing the terms of [the] Judgment and the [Stipulation and Addendum]." *See* (ECF No. 76 at T 12). The Consent Judgment was consistent with the Stipulation and Addendum and permanently enjoined several acts relating to the use of certain identified marks, including prohibiting Defendants, their officers, servants, agents, employees, attorneys, and representatives and/or anyone acting in active concert with the aforementioned from the following acts:

(a) applying to register with the U.S. Trademark Office or any other trademark office throughout the world and/or using the Infringing Marks and/or any other slogan, name or mark confusingly similar to the BLANCO Marks, including, without limitation, VALANCO, VLANCO or BLANCO, excluding VILANCO and VALCO, which the Defendants may use;

(b) opposing, petitioning to cancel, or otherwise taking action against Plaintiff's U.S. and foreign trademark applications and registrations for the BLANCO Marks and/or any mark including the term BLANCO now pending or which may be filed in the future; and

(c) registering any domain name which consists of or incorporates any slogan, name or mark confusingly similar to the BLANCO Marks, including, without limitation, VALANCO, VLANCO or BLANCO, excluding VILANCO and VALCO, which the Defendants may use.

*See* (ECF No. 76 at 2–3). The Consent Judgment further provided that any violation would result in the responsible Defendant paying to Plaintiff "liquidated damages in the amount of $150,000 for each [violation]" and the entitlement to recover attorney's fees, expert fees, and costs incurred in recovering such liquidated damages. (ECF No. 76 at 7–8).

On April 10, 2013, Third–Party Defendant Vilanco Industries Inc. filed its Annual Report that listed Joseph Napolitano as its Officer/Director, with his address being identical to Defendant Laera's Fort Lauderdale address—5960 SW 32 Terrace, Ft. Lauderdale, Florida 33312. On April 12, 2013, Defendant Laera and Vilanco Industries Inc. executed another License Agreement Modification, wherein Defendant Laera admitted violating the January 10, 2013 license modification, and agreed to pay Vilanco Industries Inc. (i) liquidated damages of $100,000,000.00; (ii) actual damages of $1,842,313.53; and (iii) punitive damages of $203,684,627.00. (ECF No.

125 Ex. 2 at 44). There is no further information contained in the document.

On June 17, 2013, Plaintiff filed its Motion to Re–Open the Case and for an Order to Show Cause Why Defendants Should Not Be Held in Contempt, to Enforce Consent Judgment, and other related relief ("Plaintiff's First Motion for Contempt"). (ECF No. 79).[13] In Plaintiff's First Motion for Contempt, Plaintiff argues that Defendants violated the Consent Judgment by, among other things, (i) filing three applications with the U.S. Trademark Office containing Prohibited Designations—U.S. Trademark Application Serial Nos. 85/911,435 "VLANCO" (stylized), 85/911,213 WWW.VLANCO.COM (stylized), and 85/911,425 "VLANCO.COM" (stylized); (ii) registering fifty-five (post-Consent Judgment) domain names containing prohibited designations;[14] (iii) re-directing the fifty-five domain names and twenty-three others to a website registered to Third–Party Defendant Robert Johnson—blancoamerica.us[15]—that uses

---

**13.** Along with the Motion to Re–Open, Plaintiff filed a related Motion to File the Submissions Under Seal (ECF No. 78), which is denied as moot by separate order.

**14.** The newly-registered domain names can be broken down into three categories:
(1) BLANCO.US; BLANCOAMERICA.US; BLANCOAUSTRALIA.US; BLANCOBRAZIL.US; BLANCOCANADA.US; BLANCOCHINA.US; BLANCOFAUCETS.US; BLANCOFRANCE.US; BLANCOGERMANY.US; BLANCOITALY.US; BLANCOSINK.US; BLANCOSINKS.US; BLANCOSPAIN.US; and BLANCOUK.US;
(2) VIANCO.COM; VIANCOAMERICA.US; VIANCOAUSTMLIA.US; VIANCOBRAZIL.US; VIANCOCANADA.US; VIANCOCHINA.US; VIANCOFAUCETS.US; VIANCOFRANCE.US; VIANCOGERMANY.US; VIANCOITALY.US; VIANCOSINK.US; VIANCOSINKS.US; VIANCOSPAIN.US; VIANCOUK.US; and
(3)VLANCO.COM; VLANCOAMERICA.US; VLANCOAUSTRALIA.US; VLANCOBRAZIL.US; VLANCOCANADA.US; VLANCO-

CHINA.US; VLANCOFAUCETS.US; VLANCOFRANCE.US; VLANCOGERMANY.US; VLANCOITALY.US; VLANCOSINK.US; VLANCOSINKS.US; VLANCOSPAIN.US; and VLANCOUK.US.
(ECF No. 79 Ex. 5 Attach. G). Plaintiff has also submitted a Declaration of Anastasios Nikolopoulos, a member of the Information and Technology group of Plaintiff's counsel (Norris McLaughlin & Marcus, P.A.), which includes a list of 78 domains that Mr. Nikolopoulos visited to record evidence of the improper redirection to "blancoamerica.us" website. (Ex. 11 submitted at October 29, 2013, evidentiary hearing).

**15.** Franka Kuschmirek's declaration (ECF No. 79 Ex. 5) states that the redirection to blancoamerica.us was current as of June 12, 2013, but that Defendant Laera has changed the redirection on "nearly a daily basis and the 23 Plaintiff-owned domain names were previously re-directed to biancoamerica.us." Bianocamerica.us is also registered in the name of Robert Johnson. (ECF No. 79 Ex. 5 at 6 n. 3).

the prohibited designation "BLANCO"; and (iv) refusing to cooperate in the transfer of domains "vlanco.cn" and "vlanco.it," including transferring ownership of such domain names to third parties.[16] *See* (ECF No. 79).

On July 10, 2013, defense counsel filed a Motion to Withdraw rather than filing a response to Plaintiff's Motion for an Order to Show Cause. (ECF No. 86). The undersigned set a hearing to address counsel's request to withdraw before considering Plaintiff's motions for contempt. The hearing was initially held on July 24, 2013, during which Defendant Laera testified that he no longer had the authority to bind Corporate Defendants. *See* (ECF No. 106). Defendant Laera testified that Robert Johnson was the President of Vilanco Industries LLC and Anna Mancini was the President of G–Tech–I Inc., neither of whom appeared at the July 24, 2013 hearing.[17] (ECF No. 106). Consequently, this Court entered an order continuing the hearing until August 7, 2013, and ordered all counsel, Defendant Laera, Robert Johnson, and Anna Mancini to attend. Furthermore, this Court ordered Defendant Laera to provide service on the newly-identified parties, Robert Johnson and Anna Mancini. (ECF No. 106). Neither Robert Johnson nor Anna Mancini[18] appeared at the August 7, 2013 hearing, after which this Court issued an order granting

defense counsel's motion to withdraw. *See* (ECF No. 117).

On July 17, 2013, prior to this Court ruling on defense counsel's Motion to Withdraw, Plaintiff filed its Second Motion for an Order to Show Cause why Defendant Laera and those acting in concert with him—Third–Party Defendants Vilanco Industries Inc., Robert Johnson, and Joseph Napolitano—should not be held in contempt along with other related relief ("Plaintiff's Second Motion for Contempt"). (ECF No. 95). Though the title of the motion identifies Vilanco Industries Inc., Robert Johnson, and Joseph Napolitano as "Defendants," as previously stated, the Third–Party Defendants were not parties to the Stipulation and Addendum, and were not defendants included in the Consent Judgment. *But see* Fed.R.Civ.P. 65(d)(2) (providing that persons bound by an injunction include parties' agents, officers, servants, employees, attorneys, and other persons acting in concert or participation with the aforementioned). Plaintiff's Second Motion for Contempt alleges continued violations of the Consent Judgment and the lack of a substantive response to Plaintiff's First Motion for Contempt.

On July 22, 2013, yet another license modification agreement was executed between Defendant Laera and Third–Party Defendant Vilanco Industries Inc. (ECF No. 144 at 7). In this document, Defen-

---

**16.** *See* (ECF No. 79 Ex. 1 at ¶¶ 11–12, Attachs. B & C) (WHOIS records showing ownership of vlanco.it in Laera's name as of April 4, 2013 date of Consent Judgment, and in third party's name on April 9, 2013); *see also* (ECF No. 79 Ex. 2 Attach. J) (WHOIS record showing third party ownership of vlanco.cn in Chinese, with certified English translation).

**17.** Despite Defendant Laera's representations that he was no longer in control of the companies, both G–Tech–I Inc. and Vilanco Industries LLC continuously listed ei-

ther mailing or principal addresses owned by Defendant Laera.

**18.** Notwithstanding Anna Mancini's connection to this post-judgment proceeding as the purported President of G–Tech–I, Plaintiff has not alleged any personal wrongdoing by Anna Mancini and maintains that Anna Mancini is an alias for Defendant Laera—evidenced by their identical addresses and her failure to appear in these proceedings to represent G–Tech–I despite adequate notice.

dant Laera and Vilanco Industries Inc. attempted to "clarify" that Joseph Napolitano was the owner and sole shareholder of Vilanco Industries Inc. and the Licensee in License Agreement I. (ECF No. 144 at 7). The modification also contains Joseph Napolitano's resignation as president of Vilanco Industries Inc. and appoints Defendant Laera as registered agent and president for the sole purpose of dissolving the company. (ECF No. 144 at 7). Defendant Laera agreed to pay Joseph Napolitano $300,000.00 "cash" immediately upon execution and $1,542,313.53 "cash" over a five-year period. (ECF No. 144 at 8). The modification further states that Defendant Laera will donate $100,921,156.73 to two separate companies. (ECF No. 144 at 8–9).

On August 8, 2013, this Court issued an Order to Show Cause, wherein it expressly advised that the failure to respond to Plaintiff's Motions for Contempt would result in a recommendation to Judge Rosenbaum that Plaintiff's Motions be granted by default. *See* (ECF No. 118). Notwithstanding express notice, Corporate Defendants Vilanco Industries LLC and G–Tech–I Inc. have failed to respond or otherwise appear in the post-judgment phase of this litigation. Likewise, Third–Party Defendants Robert Johnson, Joseph Napolitano, and Vilanco Industries Inc. have failed to appear. Indeed, on August 29, 2013, Defendant Laera voluntarily dissolved Vilanco Industries Inc.

Plaintiff's first position is that Anna Mancini, Robert Johnson, and Joseph Napolitano are aliases used by Defendant Laera to subvert the Consent Judgment.

Alternatively, Plaintiff argues that regardless of the apparent use of aliases, Defendants and Third–Party Defendants are jointly and severally liable for the violations of the Consent Judgment.

Unlike the non-responding parties, Defendant Laera has filed numerous pro se documents—including a purported response to Plaintiff's Motions for Contempt (ECF No. 132) and a 500–page Motion for an Order to Show Cause Why Plaintiff Should [Not] be Held in Contempt and related relief (ECF No. 125)—all of which are collectively addressed in this Report and Recommendation and in the Omnibus Order entered contemporaneously herewith.[19]

On August 15, 2013, Plaintiff filed an Emergency Motion for Injunction to Prohibit Further Impersonation of Plaintiff by Defendant Vito Antonio Laera. (ECF No. 126). In that motion, Plaintiff seeks to enjoin Defendant Laera from impersonating Plaintiff's counsel, which arose from one instance wherein Defendant Laera acted on behalf of Plaintiff Blanco without its permission. However, there have been no further allegations of ongoing impersonation or similar wrongdoings.

On September 13, 2013, Plaintiff filed a Motion for Entry of Default Judgment against Corporate Defendants and Third–Party Defendant Robert Johnson for their failure to respond in these proceedings. *See* (ECF No. 153). In mirror-image fashion, on September 26, 2013, Defendant Laera filed a Motion for Default Judgment against Corporate Defendants G–Tech–I Inc. and Vilanco Industries LLC.[20] *See* (ECF No. 157).

---

**19.** Defendant Laera has filed more than fifteen pro se submissions in the post-judgment phase of this action. *See* (ECF Nos. 90, 101, 102, 105, 111, 124, 125, 130, 133–34, 144, 150, 157, 158–59, 163, 165). This does not include his independent submissions in two separate actions—one in this Court styled *La-*

*era v. Blanco GmbH,* No. 13–CV–61423–RNS, which the Honorable Robert N. Scola dismissed for lack of jurisdiction, and one in the U.S. District Court for South Carolina, styled *Napolitano v. Laera,* No. 13–CV–01373–MBS.

**20.** Defendant Laera seeks neither contempt nor a default judgment against Third–Party

On October 29, 2013, the undersigned conducted an evidentiary hearing on the motions contained in the following Electronic Case Filings: 79, 95, 125, 130, 153, and 157. Despite notice being provided to all interested parties, again, Defendant Laera was the only alleged contemnor to attend. During the hearing, Defendant Laera testified that Robert Johnson and Joseph Napolitano were failed business partners. Defendant Laera also maintained that he tried to comply with the Consent Judgment but argued that Plaintiff Blanco violated the terms of the agreement first, which prompted Laera's unwillingness to comply with some terms. *See also* (ECF No. 156) (arguing that Plaintiff breached agreement). Plaintiff Blanco presented additional evidence showing Defendant Laera's redirection of domain names frame-by-frame to a domain owned by Defendant Laera that contained various forms of violative marks.

All matters are now ripe for a ruling and the undersigned recommends a specific disposition for each motion referenced herein.

## DISCUSSION

A. *Plaintiff's Motion for Emergency Injunction* (ECF No. 126)

 On August 15, 2013, Plaintiff filed an Emergency Motion for Injunction to Prohibit Impersonation of Plaintiff by Defendant Vito Antonio Laera. (ECF. No. 126). Plaintiff's Emergency Motion seeks an injunction prohibiting Defendant Laera from impersonating Plaintiff and its intellectual-property counsel, Franka Kuschmirek. (ECF No. 126). In the Motion, Plaintiff describes one instance of unauthorized behavior by Defendant Laera, in which Defendant Laera unilaterally changed the owner of a domain account

with the registrar GoDaddy.com from Robert Johnson to Plaintiff, and Plaintiff received subsequent notification concerning a bid for a domain name that it did not make. *See* (ECF No. 126). Plaintiff did not file a memorandum of law in support of its motion.

 A party seeking an injunction must show that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Klay v. United Healthgrp., Inc.*, 376 F.3d 1092, 1097 (11th Cir.2004) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000) (en banc)) (internal quotation marks omitted). A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir.1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567 (5th Cir. 1974)).

Here, Plaintiff has simply informed this Court of a single incident where Defendant Laera acted improperly—without the support of a legal memorandum as required by Local Rule 7.1(a). Though the undersigned acknowledges the fraudulent nature of Defendant Laera's conduct, because there is no evidence of ongoing impersonation, the facts alleged do not "demonstrate a threat of irreparable harm." *Siegel*, 234 F.3d at 1177. While presented as an "emergency," the undersigned finds that the events and issues presented merely evidence the progression of Defendant Laera's violations of the Consent

Defendant Robert Johnson, Joseph Napolitano, or Vilanco Industries Inc.

Judgment. As such, Defendant Laera's violations of the Consent Judgment are subsumed in the motions for contempt discussed *infra* section B. Accordingly, it is recommended that Plaintiff's Emergency Motion for Injunction (ECF No. 126) be DENIED.

### B. *The Consent Judgment, Motions for Contempt, and Related Issues*

█ A consent judgment has the same effect as any other judgment rendered by a court, and the prevailing party may request the court to enforce same. *See Smalbein v. City of Daytona Beach,* 353 F.3d 901, 907 (11th Cir.2003) ("What is important is that under a settlement agreement that is the functional equivalent of a consent decree, 'the plaintiff thereafter may return to court to have the settlement enforced.'" (quoting *Am. Disability Ass'n v. Chmielarz,* 289 F.3d 1315, 1320 (11th Cir.2002))). A party seeking an order of contempt bears the initial burden of demonstrating by clear and convincing evidence that the alleged contemnor has violated a valid court order. *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir.1990). The "clear and convincing" evidence must establish that an order was violated and that (i) the allegedly-violated order was valid and lawful; (ii) the order was clear and unambiguous; and (iii) the alleged violator had the ability to comply. *Id.* at 1516; *Jove Eng'g, Inc. v. IRS,* 92 F.3d 1539, 1545 (11th Cir.1996).

█ A defendant may also be found in contempt where the evidence gives rise to an inference that a defendant and a non-party are acting in concert to violate a consent judgment. *See Chanel, Inc. v. Krispin,* No. 08–23439, 2010 WL 4822737, at *3 (S.D.Fla.2010) (Torres, Mag. J.) (recommending sanctions and civil contempt where defendants, their agents, or persons acting in concert therewith were violating

permanent injunction). Thus, a party subject to an order or injunction is not absolved of guilt merely because a non-party did the overt act that violated the order or injunction. Moreover, a non-party to the injunction or order may be found in contempt for violating the terms thereof if it had actual notice of the prohibited conduct. *See* Fed.R.Civ.P. 65(d)(2)(C); *see also Marshak v. Treadwell,* 595 F.3d 478, 486–88 (3d Cir.2009) ("Courts ... have admitted a significant exception to the general maxim that only parties and their privies may be bound by an injunction: specifically, non-parties guilty of aiding or abetting or acting in concert with a named defendant or his privy in violating the injunction .... may be held in contempt." (quoting *Savarese v. Agriss,* 883 F.2d 1194, 1209 (3d Cir.1989)) (internal quotation marks omitted)).

█ The focus of a court's inquiry in civil contempt proceedings is not the subjective intent of the alleged contemnors; rather, it is whether their conduct objectively complied with the terms of the order. *Khimani,* 892 F.2d at 1516. Thus, alleged contemnors must do more than merely assert they did not violate the order; they must introduce evidence to support their claim. *Chanel,* 2010 WL 4822737, at *3.

The Consent Judgment in this case, entered into after the Stipulation and Addendum, contains certain prohibitions on Defendants and provides for significant monetary damages in the event of a breach by Defendants. Specifically, the Consent Judgment permanently enjoined several acts relating to the use of certain identified marks, including prohibiting Defendants, their officers, servants, agents, employees, attorneys, and representatives and/or anyone acting in active concert with the aforementioned from the following:

(a) applying to register with the U.S. Trademark Office or any other trademark office throughout the world and/or using the Infringing Marks and/or any other slogan, name or mark confusingly similar to the BLANCO Marks, including, without limitation, VALANCO, VLANCO or BLANCO, excluding VILANCO and VALCO, which the Defendants may use;

(b) opposing, petitioning to cancel, or otherwise taking action against Plaintiff's U.S. and foreign trademark applications and registrations for the BLANCO Marks and/or any mark including the term BLANCO now pending or which may be filed in the future; and

(c) registering any domain name which consists of or incorporates any slogan, name or mark confusingly similar to the BLANCO Marks, including, without limitation, VALANCO, VLANCO or BLANCO, excluding VILANCO and VALCO, which the Defendants may use.

See (ECF No. 76 at 2–3). The Consent Judgment further provided that any violation would result in the responsible Defendant paying to Plaintiff "liquidated damages in the amount of $150,000 for each [violation]" and the entitlement to recover attorney's fees, expert fees, and costs incurred in recovering such liquidated damages. (ECF No. 76 at 7–8).

**1. Plaintiff's First Motion for Contempt Against Defendants Vilanco Industries LLC, G–Tech–I Inc., and Vito Laera (ECF No. 79)**

Plaintiff's First Motion for Contempt (ECF No. 79), alleges that Defendants were in violation of the Consent Judgment by (i) filing three applications with the U.S. Trademark Office containing Prohibited Designations (as defined in the Consent Judgment); (ii) registering fifty-five new (post-Consent Judgment) domain names containing prohibited designations; (iii) re-directing these fifty-five domain names and twenty-three others to a website using the prohibited designation "BLANCO"; and (iv) refusing to cooperate in the transfer of certain domain names and transferring ownership of such domain names to third parties. See (ECF No. 79). Among other things, Plaintiff presented the sworn declarations of Franka Kuschmirek, intellectual property counsel to Plaintiff, and Liz Elfeld, an investigator for American Trademark Investigations, who was retained to assist in locating the individual named Robert Johnson. See (ECF No. 79 Exs. 1, 5). Plaintiff seeks liquidated damages, attorney's fees and costs, and many forms of injunctive relief. The requested relief is addressed *infra* section B.3.

### a. Corporate Defendants Vilanco Industries LLC and G–Tech–I Inc.

The undersigned finds that the Consent Judgment is unambiguous, valid, and enforceable. Furthermore, based on the evidence submitted with Plaintiff's motion, as well as during, and after, the October 29, 2013 evidentiary hearing, the undersigned finds that Plaintiff has presented clear and convincing evidence that Corporate Defendants, their agents, and or persons acting in concert with Defendants—i.e., Third–Party Defendants Robert Johnson, Joseph Napolitano, and Vilanco Industries Inc.—have repeatedly violated the terms of the Consent Judgment; thus, Plaintiff has made a prima facie showing that Corporate Defendants violated, and continue to violate, the Consent Judgment.

Upon a plaintiff's prima facie showing of a violation of the order—by clear and convincing evidence—the burden of production shifts to the defendants to show they were unable to comply with the order. *Commodity Futures Trading Comm'n v. Wellington Precious Metals,*

*Inc.*, 950 F.2d 1525, 1529 (11th Cir.1992). To date, Corporate Defendants Vilanco Industries LLC and G–Tech–I Inc. have not responded to Plaintiff's First Motion for Contempt. In turn, Plaintiff has filed a Motion for Default Judgment against the non-responding Corporate Defendants.[21] *See* (ECF No. 153). Plaintiff submitted credible evidence that it attempted to serve Corporate Defendants with the Order to Show Cause. (ECF No. 119).

Because Corporate Defendants Vilanco Industries LLC and G–Tech–I Inc. have not appeared to rebut the prima facie case presented by Plaintiff, the undersigned recommends that Plaintiff's Motion for Entry of Default Judgment against Vilanco Industries LLC and G–Tech–I Inc. (ECF No. 153) be GRANTED IN PART with regard to the relief requested, as further detailed *infra* section B.3.

### b. Defendant Vito Laera

 Unlike Corporate Defendants, Defendant Laera filed a collective Response to both the First and Second Motion for Contempt (ECF No. 132), which exceeds 1000 pages. Defendant Laera's Response is convoluted and incongruous. Nonetheless, after carefully reviewing the Response, the undersigned makes the following findings.

First, Defendant Laera seems to copy Plaintiff's motions in block form and, more times than not, responds with a statement that he "lacks information or belief upon the unanswered subjects." *See* (ECF No. 132). Second, Defendant Laera apparently argues that the term "BLANCO" is a generic term when, for instance, he states that "[t]he mark Blanco for sinks is like owning the make [sic] VANILLA for Icecream." *See* (ECF No. 132 at 40). Defendant Laera also appears to dispute the

obligation to re-direct certain domain names to Plaintiff. *See* (ECF No. 132 at 46) ("If [Plaintiff] would have redirected the domains as instructed we would not be having this conversation."). Last, Defendant Laera outright denies that Third–Party Defendants Robert Johnson and Joseph Napolitano are aliases or persons acting in concert with him and Corporate Defendants. *See* (ECF No. 132 at 44, 47–52).

Despite Defendant Laera's representations in his court filings and his testimony that Robert Johnson and Joseph Napolitano are not aliases, he has presented no evidence or credible explanation to rebut Plaintiff's prima facie showing that Defendant Laera was acting in concert with Robert Johnson to violate the Consent Judgment by registering prohibited domain names, filing prohibited trademark applications, improperly redirecting internet traffic to a website using prohibited marks, and failing to transfer certain domain names to Plaintiff. Moreover, the undersigned finds that nothing in Defendant Laera's lengthy Response demonstrates a good-faith attempt to comply with the Consent Judgment or an inability to comply with such judgment. Accordingly, the undersigned recommends that Plaintiff's First Motion for Contempt be GRANTED IN PART with regard to the relief requested, as further detailed *infra* section B.3.

### 2. Plaintiff's Second Motion for Contempt Against Defendant Vito Laera and Third–Party Defendants Vilanco Industries Inc., Robert Johnson, and Joseph Napolitano (ECF No. 95)

Plaintiff's Second Motion for Contempt, filed one month after the First Motion for

---

**21.** Plaintiff's Motion for Default also includes Robert Johnson as a defaulting party based on his failure to respond to Plaintiff's Second Motion for Contempt, which will be addressed *infra* section A.2.

Contempt, alleges newly discovered contumacious acts by Defendant Laera, Joseph Napolitano, and Vilanco Industries Inc. and also seeks an order finding Robert Johnson in contempt for his actions identified in the First Motion for Contempt. (ECF No. 95).

■ As previously indicated, courts can assert jurisdiction over non-parties to an injunction or order in contempt proceedings where it is alleged that the non-party violated an order in active concert or participation with a named party. *See, e.g., ClearOne Commc'n, Inc. v. Chiang,* 670 F.Supp.2d 1248, 1280–81 (D.Utah 2009) (finding that court had jurisdiction over non-party for violations of permanent injunction and temporary restraining order); *see also Computer Searching Serv. Corp. v. Ryan,* 439 F.2d 6 (2d Cir.1971) (noting that in copyright-infringement action, plaintiff who had obtained pre-trial order prohibiting defendant from transferring any of allegedly infringing assets did not need to add non-party to litigation to obtain relief for violation of order, as plaintiff could rely on its rights under Federal Rule of Civil Procedure 65(d)). However, in order to hold a non-party to an order in civil contempt for a violation thereof, the non-party must have actual notice of the enjoined acts. *See* Fed.R.Civ.P. 65(d)(2) (providing that an injunction binds "other persons who are in active concert or participation with" the parties or their agents, provided there is actual notice of the injunction).

#### a. *Vito Antonio Laera with Joseph Napolitano and Vilanco Industries Inc.*

■ On February 12, 2013, Vlanco Industries Inc.—which was originally incorporated by Defendant Laera as its president—became Vilanco Industries Inc. *See* (ECF No. 95 Ex. 5–6). Vilanco Industries

Inc.'s mailing address and registered-agent address are identical to Defendant Laera's homestead property. *Compare* (ECF No. 95 Ex. 5), *with* (ECF No. 113 Ex. 3 at 25). On April 10, 2013, in an Annual Report filed with the FDSDC, an individual named Joseph Napolitano was identified as the registered agent and President of Vilanco Industries Inc. The Annual Report included an address for Joseph Napolitano matching that of Defendant Laera's homestead property in Florida and a mailing address to a property in South Carolina that Defendant Laera owns. *See* (ECF No. 95 Ex. 7). On July 30, 2013, Joseph Napolitano resigned from his position as registered agent and was replaced by Defendant Laera. *See* (DE 113). Defendant Laera has subsequently dissolved Vilanco Industries Inc. on August 29, 2013.

Plaintiff's Second Motion for Contempt presents additional evidence of Consent Judgment violations. Specifically, Plaintiff demonstrates that Defendant Laera (or persons acting in concert with him) filed separate actions that were pending in the U.S. District Court for South Carolina, *Napolitano v. Laera,* Case No. 1:13–cv–01373–MBS–SVH, and in this district, *Laera v. Blanco GmbH + Co.KG,* Case No. 13–CV–61423–RNS. Plaintiff argues that Defendant Laera filed both actions in order to circumvent the Consent Judgment, and filed the South Carolina action in an effort to become judgment-proof by consenting to a large judgment against him so that any judgment obtained herein would be uncollectible. *See* (DE 95 at 9).

#### i. Florida Action: *Laera,* Case No. 13–CV–61423–RNS

On June 28, 2013, after Plaintiff's First Motion for Contempt was filed, Defendant Laera filed a Complaint in this district against Blanco and Corporate Defendants G–Tech–I Inc. and Vilanco Industries LLC

(which are direct parties to the Consent Judgment). *Laera,* 13–CV–61423–RNS at (ECF No. 1). Defendant Laera cited various pre-and-post-Consent Judgment breaches of contract by Blanco—asserting that Blanco failed to redirect the domain names that Laera transferred to Blanco. *Id.* On July 25, 2013, after an order requiring an amended complaint and Defendant Laera's filing of an amended complaint, the Honorable Robert N. Scola dismissed Defendant Laera's claims for failure to adequately plead jurisdiction. *Id.* at (ECF Nos. 7, 11–12). Notably, Defendant Laera filed waivers of service for G–Tech–I Inc. c/o Anna Mancini (using Defendant Laera's Fort Lauderdale, Florida address) and Vilanco Industries LLC c/o Robert Johnson. *Id.* at (ECF Nos. 8–9).

ii. South Carolina Action: *Napolitano,* Case No. 1:13–cv–01373–MBS–SVH

On May 21, 2013, Third–Party Defendants Joseph Napolitano and Vilanco Industries Inc. filed an action against Defendant Laera in the United States District Court for the District of South Carolina, *Napolitano,* Case No. 1:13–cv–01373–MBS–SVH. In that action, Joseph Napolitano and Vilanco Industries Inc. sought a judgment against Defendant Laera for the rights to the same trademarks and domain names at issue in the instant action, as well as an award of liquidated damages exceeding two-hundred million dollars. *See* (ECF No. 95 at 3–4, Ex. D). Plaintiff Blanco provided this Court with a copy of the federal complaint filed in the District of South Carolina. (ECF No. 95 Ex. D). As previously addressed in the Background section herein, Defendant Laera, Joseph Napolitano, and Vilanco Industries Inc. executed various license agreements and modifications after the commencement of the instant action against Defendants and after the Consent Judgment, all in an apparent effort for Defendant Laera to retain the use of the prohibited marks referenced in the Consent Judgment.

In essence, Defendant Laera is using the South Carolina court to obtain an order allowing him—through Third–Party Defendants Vilanco Industries Inc. and Joseph Napolitano—to use the very trademarks and domain names that he was prohibited from using by this Court's Consent Judgment. Likewise, the inordinate amount of damages alleged in the District of South Carolina action would render Defendant Laera judgment-proof in the current action, if in fact a judgment were entered against Defendant Laera in the District of South Carolina. Plaintiff, however, was able to intervene in the South Carolina case, and it has since been voluntarily dismissed. The aforementioned subversive tactics are a clear representation of Defendant Laera's and Third–Party Defendants Joseph Napolitano's and Vilanco Industries Inc.'s disregard for the Consent Judgment.

iii. Subsection B.2.a. Conclusion

Accordingly, the undersigned finds that Plaintiff has supplied this Court with a prima facie showing of Defendant Laera's and Third–Party Defendants Joseph Napolitano's and Vilanco Industries Inc.'s violation of the Consent Judgment via their various license agreements and ancillary federal court action. Regardless of whether Joseph Napolitano is an alias for Defendant Laera—despite compelling evidence that such is the case—the facts of this case are sufficient to find that Joseph Napolitano and Vilanco Industries Inc. had actual notice of the Consent Judgment and acted in concert with Defendant Laera to violate the same. Third–Party Defendants Joseph Napolitano and Vilanco Industries Inc. have failed to appear or respond in the instant action in order to rebut the prima facie showing of their contumacious

behavior. Similarly, despite filing numerous documents with this Court, Defendant Laera has not provided any competent explanation for the license agreements and the action in the District of South Carolina. Accordingly, the undersigned finds that Plaintiff's Second Motion for Contempt against Defendant Laera and Third–Party Defendants Joseph Napolitano and Vilanco Industries Inc. should be GRANTED IN PART with regard to the relief requested, as further detailed *infra* section B.3.

### b. *Vito Antonio Laera with Robert Johnson*

█ Plaintiff has submitted record evidence that Third–Party Defendant Robert Johnson filed trademark applications related to the same trademarks at issue in this litigation and those marks that are the subject of the Consent Judgment. *See* (ECF No. 79 Exs. 1, 5). Plaintiff submitted a declaration from Elizabeth Elfeld, an investigator for American Trademark Investigations Inc., who attempted to locate Robert Johnson based on his listed address of 4303 West Atlantic Boulevard, Coconut Creek, Florida 33066. Ms. Elfield was advised that the Coconut Creek address was for a leasing office in a residential complex, not an actual residence. (ECF No. 79 Ex. 1). Plaintiff also submitted further evidence concerning the relationship of Robert Johnson to Defendants and the Consent Judgment. *See* (DE 136). For instance, the domain names that Plaintiff re-directed to Defendant Laera's IP address, as required under the Consent Judgment, also reference a website owned by Robert Johnson. *See* (DE 136).

Despite Defendant Laera's representations that Robert Johnson exists and is not an alias, there has been no independent evidence of his existence—absent his name being used for various purposes prohibited by the Consent Judgment. Interestingly,

Defendant Laera testified at the October 29, 2013 evidentiary hearing that Robert Johnson is now on an open-ended vacation in Brazil. However, regardless of whether Robert Johnson is an actual person or an alias for Defendant Laera, it is clear from Plaintiff's evidence that he had actual notice of the Consent Judgment as president of Corporate Defendant Vilanco Industries LLC and acted in concert with Defendant Laera at the time he applied for prohibited trademarks.

Upon a plaintiff's prima facie showing of a violation of the order—by clear and convincing evidence—the burden of production shifts to the defendants to show they were unable to comply with the order. *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir.1992). To date, Third–Party Defendant Robert Johnson has not appeared in the current proceedings. In turn, Plaintiff has filed a Motion for Default Judgment against Robert Johnson. *See* (ECF No. 153). Plaintiff submitted credible evidence that it attempted to serve Robert Johnson with the show cause order. (ECF No. 119 Ex. A). Because Robert Johnson has not appeared in these proceedings, he has not rebutted Plaintiff's prima facie showing of contumacious behavior. Consequently, a finding of contempt against Robert Johnson and Defendant Laera for Robert Johnson's actions is warranted and the undersigned recommends that the Second Motion for Contempt against Robert Johnson and Defendant Laera be GRANTED IN PART with regard to the relief requested, as further detailed *infra* section B.3. *See, e.g., Chanel*, 2010 WL 4822737, at *3 (recommending sanctions and civil contempt where defendant or their agents or person acting in concert therewith were violating permanent injunction).

### 3. Requests for Relief

Plaintiff's Motions for Contempt collectively seek an order

(1) holding Defendants and Third–Party Defendants in contempt;

(2) awarding Plaintiff liquidated damages against Defendants and Third–Party Defendants for each violation of the Consent Judgment and the Stipulation, including $150,000.00 as liquidated damages for EACH violation relating to:

(i) the licensure of the twenty-four (24) trademarks and/or trademark applications identified in the License Agreement (and associated efforts to interfere with the entry of judgment before the USPTO with respect thereto);

(ii) the licensure of the twenty-two (22) trademarks and/or domain names identified in the first modification of License Agreement I;

(iii) the filing of U.S. Trademark Application Serial Nos. 85/911435, 85/911213, and 85/911,425;

(iv) the failure to transfer vlanco.it and vlanco.cn;

(v) the redirection of domains to a website containing prohibited designations; and

(vi) the registering of fifty-five (55) domain names containing prohibited designations;

(3) directing Defendants and Third–Party Defendants to stop redirecting domain names to a website that links or displays content featuring any prohibited designation, including the term "BLANCO";

(4) enjoining Defendants and Third–Party Defendants from filing legal claims involving the subject matter of this action without prior permission of this Court;

(5) directing Defendants and Third–Party Defendants, to abandon any further efforts to circumvent the Consent Judgment by means of the license agreements at issue in the South Carolina Action, including the use of the trademarks and domain names prohibited by the Consent Judgment;

(6) directing the Registrar(s) and Registry(ies) of the domain names containing prohibited designations, and purportedly licensed in the license agreements at issue in the South Carolina Action, to transfer ownership of said domain names, as well as vlanco.cn and vlanco.it, to Plaintiff;

(7) directing Defendants and Third–Party Defendants to cooperate in the transfer of any domain names containing prohibited designations and purportedly licensed in the license agreements at issue in the South Carolina Action by a date certain, failing which a *per diem* monetary penalty accrues in favor of Plaintiff;

(8) finding the "agreed to" liquidated damages set forth in the license agreements at issue in the South Carolina Action an unlawful effort to circumvent the enforcement mechanisms and liquidated damages provision set forth in the Consent Judgment and enjoining Defendants and Third–Party Defendants from enforcing same;

(9) directing the United States Trademark Office to comply with the Consent Judgment and enter judgment in favor of Plaintiff in the opposition/cancellation proceedings identified in Schedule A of the Consent Judgment;

(10) relieving Plaintiff of any further obligation to re-direct domain names previously owned by Defendants; and

(11) awarding attorneys' fees and cost incurred by Plaintiff in enforcing the

Consent Judgment. (ECF No. 95 at 19–20).[22]

The Consent Judgment provides for liquidated damages of $150,000.00 for each violation. *See* (ECF No. 76 at 10). Plaintiff submits that Defendants and Third–Party Defendants violated the Consent Judgment each time a prohibited designation was registered, licensed, applied for, used on a website, or not properly transferred to Plaintiff. *See* (ECF No. 95). According to Plaintiff, the violations of the Consent Judgment warrant an aggregate award in excess of seven million dollars. (DE 95). Based on the potential impact and significant magnitude of Plaintiff's request for relief, the undersigned has carefully considered its appropriateness under the current circumstances.

■■■ A damages provision is enforceable where the damages consequent to a breach are not readily ascertainable and the sum stipulated to be forfeited is not grossly disproportionate to damages that might be reasonably expected to result from a breach. *See Country Inns & Suites by Carlson, Inc. v. Interstate Props., LLC,* 329 Fed.Appx. 220, 221 (11th Cir.2009) (citing *Lefemine v. Baron,* 573 So.2d 326, 328 (Fla.1991)). Liquidated-damages provisions are useful in trademark infringement actions because it is difficult for the owner of a trademark to prove the amount of his damage or how much of the damage is caused by infringement. *See Carling Brewing Co. v. Philip Morris, Inc.,* 277 F.Supp. 326, 335 (N.D.Ga.1967) (citing *Pure Foods v. Minute Maid Corp.,* 214 F.2d 792, 797 (5th Cir.1954)); *see also Aronowitz v. Health–Chem Corp.,* 513 F.3d 1229, 1241 (11th Cir.2008) (acknowledging that trademark-infringement damages may be awarded de-

spite the fact that they are not susceptible to precise calculations).

■■■ Here, liquidated damages are appropriate because the damages caused by the violations of the Consent Judgment by Defendants and Third–Party Defendants are not quantifiable. However, though an aggregate award of over seven million dollars could be justified if this Court separates the violations into each improperly used or transferred domain name and trademark, the practicality of such an award is lacking in this case. All indications are that each violation of the Consent Judgment is the doing of one man—Defendant Laera. The evidence strongly indicates that he has been using fake names, shell companies, and subversive tactics to violate an agreement that he apparently regretted executing. The thrust of this action is to get Defendant Laera to comply with the Consent Judgment and to award Plaintiff damages for the many violations thereof. The undersigned does not ignore the breadth of Defendant Laera's seemingly fraudulent behavior, but recommends that many violations be merged into categories, to which the $150,000.00 liquidated damages will be awarded for each category as follows:

(i) the licensing of trademarks, trademark applications, and domain names identified in License Agreement I between Defendant Laera, Vilanco Industries Inc., and Joseph Napolitano, including the filing of the legal action in the District of South Carolina;

(ii) the filling of U.S. Trademark Application Serial Nos. 85/911435, 85/911213, and 85/911,425 by Robert Johnson and Defendant Laera;

**22.** Plaintiff also sought to consolidate this case with Case No. 13–CV–61423–RNS; however, as previously addressed, Case No. 13–CV–61423–RNS has since been dismissed.

(iii) the registering of domain names in violation of the Consent Judgment by Robert Johnson and Defendant Laera; and

(iv) the failure to transfer vlanco.it and vlanco.cn and the redirection of domains to websites using the prohibited designation "BLANCO."

Consistent with the above categories and based on a finding that Defendants' and Third–Party Defendants' violations are all interrelated, it is recommended that Defendant Laera, Corporate Defendants Vilanco Industries LLC and G–Tech–I, and Third–Party Defendants Robert Johnson, Joseph Napolitano, and Vilanco Industries Inc. be jointly and severally liable for the sum of $600,000.00 in liquidated damages ($150,000.00 multiplied by four categorical violations). The undersigned also recommends the award of reasonable attorney's fees and costs related to this action, pursuant to the terms of the Consent Judgment.

Regarding Plaintiff's requests for injunctive relief against Defendants and Third–Party Defendants, the undersigned finds that the Consent Judgment already prohibits the conduct of Defendants and Third–Party Defendants that Plaintiff seeks to enjoin; thus, the finding of contempt and award of damages sufficiently compels the parties to cure any ongoing violations of the Consent Judgment without the need of further injunctions. Defendants and Third–Party Defendants should cure any ongoing violations of the Consent Judgment within 14 days of the date of the District Judge's Order on this Report and Recommendation.

The undersigned further recommends that this Court direct the Registrar(s) and Registry(ies) of the domain names containing prohibited designations identified in the Consent Judgment and licensed in the license agreements at issue in the South Carolina Action discussed herein to transfer ownership of the domain names to Plaintiff, including vlanco.cn and vlanco.it. Also, the United States Trademark Office should be directed to comply with the Consent Judgment and enter judgment in favor of Plaintiff in the opposition/cancellation proceedings identified in Schedule A of the Consent Judgment.

Last, Plaintiff asks this Court to relieve it from its duty to comply with the Consent Judgment based on Defendants' and Third–Party Defendants' actions. The undersigned recommends that this Court deny Plaintiff's request. Defendant Laera testified at the evidentiary hearing that he has a large quantity of merchandise bearing prohibited designations that he needs to sell before the sell-off period expires. The undersigned acknowledges the business implications of the Consent Judgment and recommends that the terms of the Consent Judgment continue to be honored by all parties.

### 4. Defendant Laera's Motion for an Order to Show Cause (ECF No. 125)

On August 15, 2013, Defendant Laera re-filed a Motion for Order to Show Cause Why Plaintiff should [Not] be Held in Contempt and other related relief, wherein he purports to assert nine causes of action against Plaintiff. *See* (ECF No. 125). The crux of Defendant Laera's position is that, as he sees it, he was allowed to use any name or mark **confusingly similar to "VILANCO" and "VALCO."** *See* (ECF No. 125 at 4) Specifically, Defendant Laera stated, "I believe that I can register any domain names which consists of or incorporates any slogan, name or mark confusingly similar to 'Vilanco' and 'Valco' without restrictions whatsoever. Blanco breached and/or violated this clause/provision by protesting vianco.com." (ECF No. 125 at 4). Defendant Laera's position is

unquestionably an improper interpretation of the operative language contained in the Consent Judgment, which prevented Defendants or its agents and those acting in concert with them from registering trademarks or domain names "using the Infringing Marks and/or any other slogan, name or mark confusingly similar to the BLANCO Marks, including, without limitation, VALANCO, VLANCO or BLANCO, excluding VILANCO and VALCO, which the Defendants may use." (ECF No. 76 at 2–3). Contrary to Defendant Laera's contentions, the mark "vianco" was specifically referenced as a prohibited trademark application term in the Consent Judgment. *See* (ECF No. 76 at ¶ 5(bb)-(ee)). Defendant Laera misinterprets the language of the Consent Judgment to provide him with the right to use any term confusingly similar to "VILANCO" and "VALCO." The language of the Consent Judgment states no such thing. Though not all terms confusingly similar to "VILANCO" or "VALCO" are prohibited by the Consent Judgment, e.g. "valcro," any term that is confusingly similar to "VILANCO" or "VALCO" and **also** confusingly similar to "VALANCO, VLANCO, or BLANCO," e.g. "vianco," is prohibited from use by Defendant Laera, Corporate Defendants Vilanco Industries LLC and G–Tech–I Inc., and Third–Party Defendants Robert Johnson, Joseph Napolitano, and Vilanco Industries Inc.

■ As previously stated, the party seeking an order of contempt bears the burden of demonstrating by clear and convincing evidence that the alleged contemnor has violated a valid court order. *Howard Johnson Co.*, 892 F.2d at 1516. Defendant Laera filed a 500–page motion that purports to assert nine claims for contempt. Defendant Laera makes the legally invalid assertion that he "is a member of the public and is free to use Blanco

in any way shape or form allowed by law and the constitution of the United States of America." *See* (ECF No. 125 at 34). While courts should afford a litigant proceeding pro se leeway in pleadings, even pro se litigants must satisfy essential burdens. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991). Applying the pertinent legal standards set out *supra* section B, the undersigned finds that Defendant Laera has failed to meet his burden of providing clear and convincing evidence of a violation by Plaintiff to warrant a finding of contempt. Accordingly, the undersigned finds no legal or factual basis in Defendant Laera's submissions as he fails to recognize the validity of the Consent Judgment and the related Stipulation and Addendum.

Furthermore, contrary to Defendant Laera's assertions, Plaintiff has demonstrated its compliance with the Consent Judgment by providing evidence that it re-directed all domain names as required by the Consent Judgment, or attempted in good faith to comply with the Consent Judgment. (ECF No. 79 Exs. 2E, 2F; ECF Nos. 138, 139). Accordingly, the undersigned recommends that Defendant Laera's Motion for Order to Show Cause Why Plaintiff should [Not] be Held in Contempt and other related relief (ECF No. 125) be DENIED.

### 5. Defendant Laera's Motion for Entry of Default Judgment (ECF No. 157)

Defendant Laera filed a Motion for Default Judgment (ECF No. 157) against Corporate Defendants Vilanco Industries LLC and G–Tech–I Inc. for their failure to respond to his counterclaim and Motion for an Order to Show Cause. *See* (ECF No.

157 at 1). Because this Court strikes Defendant Laera's counterclaim in the related Omnibus Order and recommends denial of his Motion for an Order to Show Cause, it is recommended that Defendant Laera's Motion for Default Judgment against Vilanco Industries LLC and G–Tech–I Inc. (ECF No. 157) be DENIED AS MOOT.[23]

### RECOMMENDATION

Based on the foregoing, the undersigned recommends as follows:

1. Defendant Vito Laera's Motion for an Order to Show Cause (ECF No. 125) should be DENIED.

2. Plaintiff's Motion for a Preliminary Injunction (ECF No. 126) should be DENIED.

3. Defendant Vito Laera's Motion for Default Judgment (ECF No. 157) should be DENIED AS MOOT.

4. Plaintiff's Motions for Contempt (ECF Nos. 79, 95) and Motion for Default Judgment (ECF No. 153) should be GRANTED IN PART as follows:

(a) Defendants Vito Antonio Laera, Vilanco Industries LLC, and G–Tech–I, and Third–Party Defendants Robert Johnson, Joseph Napolitano, and Vilanco Industries Inc. are in contempt of this Court's Final Judgment on Consent (ECF No. 76);

(b) Defendants Vito Antonio Laera, Vilanco Industries LLC, and G–Tech–I, and Third–Party Defendants Robert Johnson, Joseph Napolitano, and Vilanco Industries Inc. are jointly and severally liable for $600,000.00 in liquidated damages awarded to Plaintiff;

(c) the Registrar(s) and Registry(ies) of the domain names containing prohibited designations identified in the Consent Judgment and licensed in the license agreements at issue in the South Carolina Action discussed herein shall transfer ownership of the domain names to Plaintiff, includingvlanco.cn and vlanco.it;

(d) the United States Trademark Office shall comply with the Consent Judgment and enter judgment in favor of Plaintiff in the opposition/cancellation proceedings identified in Schedule A of the Consent Judgment;

(e) Plaintiff shall continue to comply with the Consent Judgment;

(f) Plaintiff is entitled to attorney's fees and costs associated with this action pursuant to the Consent Judgment.

The temporary stay on filings in this case is lifted for the limited purpose of allowing the parties to have fourteen (14) days after service of a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Robin S. Rosenbaum, United States District Judge. *See* 28 U.S.C. § 636(b)(1) (providing procedure for review of magistrate judge report and recommendation). Written objections shall be no longer than twenty (20) pages in length, unless leave is granted, pursuant to Local Rule 7.1(c)(2). Failure to timely file objections shall bar the parties from a de novo determination by Judge Rosenbaum of any issue covered in the Report and shall bar the parties from challenging, on appeal, the factual findings accepted or adopted by this Court, except upon grounds of plain error or manifest injustice. *See Thomas v. Arn,* 474 U.S. 140, 145–53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (holding that party waives appellate review of magistrate judge's factual findings that were not ob-

---

**23.** This Court previously excused Plaintiff from having to respond to Defendant Laera's vexatious filings unless expressly directed to do so. (ECF No. 167). After review of Defendant Laera's Motion for Default Judgment, no response was necessary.

jected to within period prescribed by 28 U.S.C. § 636(b)(1) (citing *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir. 1981))); *see also Dupree v. Warden,* 715 F.3d 1295, 1300 (11th Cir.2013) (holding that under current Eleventh Circuit rule: "[T]he failure to object limits the scope of our appellate review to plain error review of the magistrate judge's *factual findings*[; however,] failure to object to the magistrate judge's *legal conclusions* does not preclude the party from challenging those conclusions on appeal.").

DONE AND SUBMITTED at Fort Lauderdale, Florida this 12th day of December 2013.

### *Table of Related Companies*

| Corporate Defendant G–Tech–I Inc. | Corporate Defendant Vlanco/Vilanco Industries LLC | Third–Party Defendant Vlanco/Vilanco Industries Inc. |
| --- | --- | --- |
| 3/21/2007: | 11/16/2011: | 4/9/2012: |
| *Articles of Incorporation:* filed by Vito Laera | *Articles of Organization:* Organized as "Blanco Industries LLC" filed by Registered Agent G–Tech–I | *Articles of Incorporation:* Incorporated as "Vlanco Industries Inc." Filed by Vito Laera with address of 5960 SW 32 Ter., Ft. Lauderdale, FL 33312 |
| *Address:* 5960 SW 32 Ter. Ft. Lauderdale, FL 33312 | *Address:* 419 York Southern Rd., Ft. Mill, SC 29715 | |
| | *Contact Person:* Vito Laera, 5960 SW 32 Ter., Ft. Lauderdale, FL 33312 | |
| 2/28/2008: | 3/12/2012: | 2/12/2013: |
| *Annual Report:* address is 419 York Southern Rd., Ft. Mill, SC 29715 | Name changed to Vlanco Industries LLC | Name changed to Vilanco Industries Inc. |
| 1/3/2012: | 1/29/2013: | 4/10/2013: |
| *Annual Report:* Registered Agent is Vito Laera | Name Changed to Vilanco Industries LLC | *Annual Report:* Registered Agent is Joseph Napolitano with address 5960 SW 32 Ter., Ft. Lauderdale, FL 33312 |
| 4/10/2013: | 4/10/2013: | 7/30/2013: |
| *Annual Report:* Registered Agent and Officer is Anna Mancini with address of 5960 SW 32 Ter., Ft. Lauderdale, FL 33312; Company mailing address of 419 York Southern Road, SC 29715 | *Annual Report:* Registered Agent is Robert Johnson with address 4303 W. Atlantic Blvd., Coconut Creek, FL 33066; Company mailing address of 5960 SW 32 Ter., Ft. Lauderdale, Florida 33312. | Notice of resignation of Joseph Napolitano. |
| | | Registered Agent is Vito Laera with addresses 419 York Southern Road, Fort Mill, SC 29715 and 5960 SW 32 Ter., Ft. Lauderdale, FL 33312 |
| 12/8/2013: | 12/8/2013: | 8/29/2013: |
| No change in information since 4/10/2012 | No change in information since 4/10/2013 | Voluntary Dissolution of Corporation. |

## ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDER-ATION

This matter is before the Court upon Plaintiff BLANCO GmbH + Co. KG's Motion Requesting Reconsideration and Further Amendment of Amended Order Adopting Magistrate's Report and Recommendation [ECF No. 196]. In its Motion, Plaintiff again asks the Court to relieve Plaintiff of its obligation under the parties' settlement agreement to redirect certain domain names as a result of Defendant's bad-faith conduct. Plaintiff also requests that the Court award Plaintiff attorney's fees and costs as sanctions for Defendant's actions. The Court has considered Plaintiff's Motion and all supporting and opposing filings and is otherwise fully advised. For the reasons set forth below, the Court grants Plaintiff's Motion.

### I. Background

On January 13, 2014, the Court adopted Magistrate Judge Hunt's Report and Recommendation, which disposed of numerous motions filed by both parties in this case. *See* ECF No. 192. In adjudicating Plaintiff's Motions for Contempt, the Court found that Defendants and other non-parties to the litigation were in contempt of the Court's Final Judgment on Consent and were therefore jointly and severally liable for $600,000.00 in liquidated damages. *See id.* at 11. Despite Defendants' violation of the Consent Judgment, however, the Court ordered Plaintiff to continue to comply with its obligations under the parties' settlement agreement. *Id.* at 12. Specifically, pursuant to the parties' Stipulation of Settlement, Plaintiff is obligated to temporarily redirect certain domain names to the IP address "vilanco.com" so that Defendants can continue to sell products with non-infringing designations. According to Plaintiff, Defendant Vito Anto-nio Laera is now further redirecting those domain names from "vilanco.com" to another website that features various Nazi iconography. As a result of these actions, Plaintiff renews its request to be relieved of its obligation to redirect the various domain names and requests that the Court impose monetary sanctions against Laera in the form of attorney's fees and costs.

### II. Legal Standards

#### A. Reconsideration

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.,* 181 F.Supp.2d 1366, 1370 (S.D.Fla.2002) (citing *Mannings v. Sch. Bd. of Hillsborough Cnty.,* 149 F.R.D. 235, 235 (M.D.Fla.1993)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* at 1369 (quoting *Z.K. Marine Inc. v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla.1992)). Only three major grounds generally justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.,* 62 F.Supp.2d 1316, 1331 (M.D.Fla.1999); *Sussman,* 153 F.R.D. at 694).

#### B. Sanctions

A court may award attorney's fees and costs as a sanction for bad-faith litigation pursuant to the court's inherent authority. *Barash v. Kates,* 585 F.Supp.2d 1368, 1371 (S.D.Fla.2008) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 51–53, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Invocation of this inherent power serves the dual purpose of (1) vindicating judicial au-

thority without resort to the more drastic sanctions available for contempt of court and (2) making the prevailing party whole for expenses caused by his opponent's obstinacy. *Allapattah Servs., Inc. v. Exxon Corp.,* 372 F.Supp.2d 1344, 1373 (S.D.Fla. 2005) (citing *Chambers,* 501 U.S. at 46, 111 S.Ct. 2123). Due to their potency, though, a court's "inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44.

The key to invoking inherent authority is a finding of bad-faith conduct. *See Byrne v. Nezhat,* 261 F.3d 1075, 1121 (11th Cir.2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008); *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998). Bad-faith conduct can be demonstrated by a party's knowing or reckless raising of a frivolous argument, by a party's harassment of an opponent, by a party's delay or disruption of a proceeding, or by a party's hampering of the enforcement of a court order. *Byrne,* 261 F.3d at 1121 (citing *Barnes,* 158 F.3d at 1214). In determining the propriety of a bad-faith fee award, the inquiry focuses "primarily on the conduct and motive of a party." *Rothenberg v. Security Mgmt. Co.,* 736 F.2d 1470, 1472 (11th Cir.1984).

### III. Discussion

Here, Plaintiff seeks reconsideration of the Court's prior Order based upon newly discovered evidence. In this regard, Plaintiff contends that it recently discovered that, rather than utilizing Plaintiff's redirection of the domain names to continue Laera's business operations, Laera is further redirecting the domain names to a website depicting Nazi imagery.

A review of the evidence included with Plaintiff's Motion leaves no doubt as to the accuracy of Plaintiff's assertion. Indeed, a DVD provided by Plaintiff portrays each domain name being typed into an Internet browser, being redirected to "vilanco.com," and then being further redirected to the IP address "albusbella.com." That website, in turn, depicts a large photograph of Adolph Hitler, various Nazi swastikas, the Nazi flag, and the Nazi emblem. The Court's own search reveals that since the filing of Plaintiff's Motion, Laera has done nothing to halt this additional redirection.

Laera's redirection of Plaintiff's domain names to an IP address portraying nothing but Nazi symbols is egregious and epitomizes bad faith. The purpose of redirecting the domain names was to allow Defendants to utilize the infringing domain names for a limited transition period so that Defendants could continue to sell their products without interruption. But it is evident that Laera has completely abused this allowance by attempting to associate Plaintiff with the Nazi party for the sole purpose, it appears, of besmirching Plaintiff's business reputation.[1] Because Laera has used the redirection process solely for nefarious reasons and the redirection no longer serves the purpose for which it was intended, the Court grants Plaintiff's request to be relieved of its obligation, and Plaintiff shall no longer be required to redirect the relevant domain

---

1. This is not the first time that Laera has attempted to make such an association. In a previous motion, Laera accused Plaintiff of, among other things, being in "active concert with the German State which committed the acts/crimes of: (1) Genocide, (2) Slave/Forced labor, (3) Crimes Against Humanity, (4) Mass Murder." ECF No. 159 at 1–2. Magistrate Judge Hunt struck the Motion and assessed sanctions against Laera, finding that the filing was "baseless and scandalous" and submitted in bad faith. ECF No. 184 at 8.

names to "vilanco.com." [2]

The Court also finds that sanctions are appropriate in this instance. As noted above, there can be no question that Laera's conduct amounts to bad faith. His multiple attempts to associate Plaintiff with Nazi war crimes reveal his antagonistic motivations and constitute harassment. Indeed, Laera's actions have done nothing but unnecessarily delay this litigation and disrupt enforcement of this Court's Consent Judgment. Accordingly, Plaintiff is entitled to an award of reasonable attorney's fees and costs. Because Plaintiff provided only an estimate as to the total fees and costs it incurred in relation to its Motion, the Court directs Plaintiff to separately file a motion for attorney's fees that complies with the Local Rules so the Court may determine the reasonableness of the award sought.

### IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff BLANCO GmbH + Co. KG's Motion Requesting Reconsideration and Further Amendment of Amended Order Adopting Magistrate's Report and Recommendation [ECF No. 196] is **GRANTED.** Plaintiff shall separately file a motion for attorney's fees in accordance with this Order.

---

**2.** The Court notes that the parties' settlement agreement requires redirection only until May 25, 2014. Thus, the Court's Order shortens Plaintiff's obligation by only a few days.